GUNTER & SAWYERS *v.* ROAD IMPROVEMENT DISTRICT NO. 1, GRANT COUNTY.

Opinion delivered October 23, 1916.

1.   CONTRACTS—PAROL TESTIMONY TO VARY WRITING.—Parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument. Where the written contract is plain, unambiguous and complete in its terms, parol testimony is not admissible to contradict, to vary or to add to any of its terms.

2.   CONTRACT—AGREEMENT TO PURCHASE BONDS—PAROL TESTIMONY TO
     VARY WRITING.—Where a contract to purchase improvement district
     bonds was in writing and unambiguous, the sellers will not be per-
     mitted by parol testimony, to engraft a new provision or condition
     upon the contract, and then forfeit the contract for the buyer's alleged
     breach of such condition.

Appeal from Grant Circuit Court; *W. H. Evans,*
*Judge;* reversed.

STATEMENT BY THE COURT.

Appellants, a partnership, engaged in buying
bonds, brought this suit against Road Improvement
District No. 1 of Grant County and the commissioners
thereof, naming them, for damages claimed for the
alleged breach of the contract of a sale of bonds of said
district, to them.   Sealed bids were advertised for and
appellants submitted a bid as follows:

18——March——1915.

Board of Commissioners of Grant County, Arkansas,
Road Improvement District No. 1, Sheridan, Arkansas.
     Gentlemen:

For your $150,000 of 6% road bonds, to be issued
by your Road Improvement District, we hereby offer
you par less $4,500 for same; bonds to be dated April
1, 1915, and any interest accruing on the bonds after
May 1, 1915, shall be paid to you in addition to the
purchase price.   Interest payable semi-annually; bonds
to mature serially at any intervals most satisfactory to
you, provided they do not extend over a period longer
than thirty years from date.   Will deposit $25,000 of
the proceeds with the Grant County Bank at Sheridan,
the remainder with the Southern Trust Company at
Little Rock.   The acceptance of the bonds by us will
be conditioned upon the bonds being approved by
either F. Wm. Kraft or Wood & Oakley, bond attor-
neys, of Chicago, for whose services we agree to pay.
We also agree to pay for printing and lithographing of
the bonds, and to pay Trustee's charges for registration
of same.

As an evidence of good faith, we enclose you herewith our certified check for $3,000, payable to you as per contract.

Yours very truly,

GUNTER & SAWYERS,

JOG-McM                    By.....................

This bid was accepted by the commissioners.

The minutes of the meeting of the board of commissioners of March, 1915, at which all were present, show that motions were made and carried that only sealed bids for the sale of bonds should be received; that a certified check of $3,000 should be required of each bidder; that the schedule presented by R. R. Posey marked "Exhibit A" be adopted and that bonds run for a period of 25 or 30 years, the exact time to be later determined; that Fred Jones be elected assessor of the district to take the place of R. W. Glover, who did not qualify, and upon opening the bids of Gunter & Sawyers of Little Rock, Ark., and of James Gould of Pine Bluff, Ark., they being the only two bidders on the sale of the bonds, Gunter & Sawyers were found to be the highest and best bidders, and "Motion made by J. L. Butler and carried that Gunter & Sawyers be declared the highest and best bidders, and that the bonds of Road Improvement District No. 1, Grant County, be sold to Gunter & Sawyers, that the Board this day enter into a written contract with said Gunter & Sawyers for the sale of said bonds."

Thereupon the following contract was entered into, executed and delivered to appellants.

"Contract.

"Know all men by these Presents:

"That for and in consideration of the sum of One Dollar to us in hand paid by Gunter & Sawyers, of Little Rock, Arkansas, the receipt of which is hereby acknowledged, and in consideration of the stipulation hereinafter set forth, we, the Commissioners of the Road Improvement District No. 1, Grant County,

Arkansas, by virtue of authority vested in us, have this day sold, transferred, set over, assigned, and do by these presents agree to sell, transfer, set over and assign to Gunter & Sawyers 150,000 to 160,000 dollars of bonds to be issued by said Road Improvement District, No. 1, Grant County, Akansas, for the purpose of Road Improvements.

These bonds are to be dated the first day of April, 1915, and bear interest at the rate of 6% per annum, interest payable semi-annually. Interest after May 1, 1915, to accrue to the District until bonds are delivered. Interest and principal payable at such place as may be designated by the purchasers. Bonds to mature at any time satisfactory to said Commissioners of said Improvement District, provided said maturities do not extend over a period longer than thirty years from date.

"It is further understood and agreed that the purchase price of said bonds shall be 100 cents on the dollar of par value and for the purpose of this contract said par value is and does not exceed 100 cents on the Dollar.

"It is also agreed and understood that the funds derived from the sale of said bonds shall be deposited as follows:

"Twenty-five Thousand Dollars ($25,000) in the Grant County Bank at Sheridan, Arkansas, and the remainder to be deposited with the Southern Trust Company, of Little Rock, Arkansas, who agrees to pay 3% interest on Daily Balance, and the funds shall be subject to checks drawn by proper officials of said Road Improvement District, accompanied by Engineer's estimates as the work is being done.

"It is also agreed and understood that said Gunter & Sawyers shall place the proceeds derived from the sale of said bonds in the hands of said depository within ten days after the bonds have been approved by their attorneys.

"It is also agreed and understood that as an evidence of good faith on the part of the purchasers herein named, they shall deposit a certified check to the

amount of Three Thousand Dollars ($3,000), payable to the Board of Commissioners of Grant County Road Improvement No. 1. The receipt of said check is hereby acknowledged by the Board of Commissioners of said Road Improvement District with the understanding that said check is not in payment of any part of the purchase price of said bond issue, but is being deposited only as an evidence of good faith of the purchasers and as a guarantee of compliance with this contract.

"It is also agreed and understood that the acceptance of these bonds by the purchasers herein named is conditioned upon the bonds and their legality being approved by their attorneys.

"It is also agreed and understood that the Commissioners of said Road Improvement District No. 1, Grant County, Arkansas, shall allow Gunter & Sawyers 4,500 Dollars for legal opinion of their attorneys and for printing and lithographing said bonds.

"It is also agreed and understood that the said Commissioners shall furnish promptly all information required for the preparation of these bonds, and their failure to do so shall not release them of this contract unless it can be proven that it is beyond their power to furnish said information.

"However, in case the proceedings leading up to the issuance of these bonds are not approved by the attorney for said Gunter & Sawyers, this contract shall become null and void and in no way binding for and upon anyone herein mentioned.

"Witness our hand and seal this 19th day of March, 1915.

"GUNTER & SAWYERS,
"By J. O. GUNTER.
"J. L. WEST,
"M. W. ELKINS,

. . . . . . . . . . . . . . . . .
"J. W. KELLEY,
"W. H. KEMP."

Appellants were requested to meet the board in August to arrange for furnishing some money. Afterwards the district sold and delivered its bonds to James Gould and appellants brought this suit, alleging the terms of the contract, their willingness to comply with it, that the commissioners had broken the contract without authority and were personally liable also and prayed judgment for $4,500 plus $825 interest, less the cost of printing the bonds and the attorney's fee.

The answers admitted that the contract was made but alleged that at the time it was made it was publicly announced to all bidders present that the purchaser would be required to advance the board $3,000 for preliminary expenses and that any contract entered into for the sale of the bonds would be subject to said advancement; that appellants agreed thereto and to pay the same when demanded; that they failed to do so and thereby forfeited the contract. That they failed to have the attorneys named in the contract to render an opinion upon the validity of the bonds, which also avoided the contract; denied ability of appellants to sell the bonds at par and that they were damaged in any sum.

It appears from the testimony that the bid was made and accepted and the contract enterd into and executed as already set out, and that the certified check for $3,000 was duly deposited with the commissioners of the district in accordancewith the terms of the contract. J. O. Gunter, one of the appellants, stated that instead of buying the bonds at 95 or 96 cents, they bought at par, as the board preferred it, the board allowing the $4,500 plus one month's interest; that they were to pay the cost of printing the bonds and the attorney's fee for the opinion upon the validity of the bonds, which would have been $300 under the original agreement, or $500 after the other attorneys, Rose, Hemingway, Cantrell, Loughborough & Miles were substituted by agreement for the attorneys named in the contract. Stated he sold the bonds at par to Jno. H. Blessing & Co., bond buyers at St. Louis and his prof-

its would have been $4,825. That after the bonds were bought, an injunction suit was brought against the district to test its validity; the new firm of lawyers was then agreed upon and further proceedings as to the printing and issuance of the bonds were suspended awaiting the decision of the Supreme Court on what is herein termed the "friendly test case."

On July 2nd, the attorney of the district wrote mentioning the status of the suit and saying the district would like to get the money on the note executed by appellants for the payment of preliminary expenses that had to be made. On the 9th, he wrote again, stating the time preferred for the running of the bonds and the amount thereof and suggesting that appellants, as soon as the decision was rendered, if favorable, should proceed accordingly, saying also, "We hope as soon as this opinion is handed down, you will let the district have $3,000 as we are in great need of it. On July 10th, appellant answered it had not received from the district's other attorney the detailed maturity of the bonds and relative to the loan of $3,000 to your road district, we will say we see no reason why this can not be made with safety to all concerned, if the Supreme Court ruling is favorable." On the 14th West, one of the commissioners wrote appellants they were trying to get some money for preliminary work of the organization and that some of the commissioners favored re-letting the contract. On August 9, Posey wrote that the board regarded the contract abrogated as the money for preliminary expenses had not been advanced and requested them to come down on the 13th for a conference. On the 10th appellants replied that they had not agreed to furnish $3,000 for preliminary expenses; that the only requirement was a certified check as a guarantee which had been put up; that they did not want the contract cancelled and could not see where it would be of any advantage to come down as the bonds were tied up pending the court's decision and if the district preferred they would have the bonds printed and executed and placed in escrow with the

Southern Trust Company, that they might be cleared immediately upon the handing down of the court's decision, if it was favorable. If the district would stand the expense of certifying in case the decision was unfavorable, that they would pay for the printing of the bonds as it was a part of the contract.

The district sold and delivered the bonds to Mr. Gould before the court's decision was rendered.

The testimony on the part of appellees tends to show that it was stated at the time the contract of sale was entered into that it would be subject also to the payment of $3,000 from the successful bidder for preliminary expenses of organization. The engineer, several of the commissioners and one of the attorneys of the district testified over appellants objections that after the bids were opened and before the contract was awarded and executed, it was stated to the bidders that the successful bidder would be expected to advance $3,000 for payment of preliminary expenses of the organization of the district.

Dr. Butler stated he was a commissioner and was present when the bonds were sold to Gunter & Sawyers and Gunter & Sawyers were required to put up $3,000 for faithful performance. "And then we decided that we would have them put up Three Thousand Dollars for preliminary work. We did not have any money, and could not do anything." We notified Mr. Gunter to that effect and they agreed to advance it. When the contract was afterwards drawn up and presented to me for signature, I refused to sign it, because it didn't have the $3,000 in it, but the rest of them signed it.

Appellant tried to make arrangements to get $3,000, provided we signed a note. The case was then in court. During all this time, the case was in the Supreme Court, and it is true Mr. Gunter said we could have our money as soon as the case was decided, but we wanted $3,000 then, and if the case was lost it was simply their risk as the district would not have paid it back, for they were just taking chances when they offered it to us.

West stated he was present when Mr. Gunter was asked if he would furnish $3,000 for preliminary expenses and he replied it was all right, and the contract was let with that understanding and he did not furnish it.    Gunter said he was awaiting the Supreme Court's decision.

The secretary of the board stated he kept the minutes, that at the letting of the contract there was something said about whoever got the contract should furnish the board $3,000, he did not know whether the matter was brought to Mr. Gunter's attention or how it was discussed, but Mr. West presided and made the remark and asked each bidder about it, but did not know whether this was before or after the bids were opened, but it was before the contracts were awarded. That he was present when the contract was abrogated; that he went to see Mr. Gunter once about the $3,000, that they went to the Southern Trust Co. and Mr. Vinson told us he would let us have the money, but he did not do it and I advised the board if the Supreme Court knocked it out, they would be liable for it personally. He said at the time he would let us have the money. The case was then in the Supreme Court.    We abrogated the contract with Gunter before the Supreme Court passed on the validity of the organization of the district.

All the testimony relating to conversations between Mr. Gunter of appellant firm and the commissioners with reference to the contract sued on made prior to the execution and delivery of it, was objected to and exceptions saved to the rulings thereon, and appellant then moved that all such evidence be stricken from the record and withdrawn from the jury, which motion was overruled and exception saved.    From the judgment against appellants, this appeal was duly prosecuted.

*Chas. Jacobson,* for appellants.

All testimony to show that the successful bidder would be required to pay $3,000.00 before the contract

would become operative and binding, was incompetent, because its effect was to vary and contradict the written contract entered into by the parties. The principle is thoroughly established that "Antecedent propositions, correspondence and prior writings, as well as oral statements and representations, are deemed to be merged into the written contract which concerns the subject matter of such antecedent negotiations, when it is free of ambiguity and complete." 83 Ark. 283; 104 Ark. 488. See, also, 82 Ark. 219; 99 Ark. 223; 71 Ark. 408; 91 Ark. 383; 2 Page on Contracts, 1822, § 1190; 97 Tenn. 469; 37 S. W. 543.

In the Whittaker case, 100 Ark. 360, relied on by appellee, the parol evidence was admitted, not to add to or vary the terms, but to show that the contract was not actually entered into, and the court in that case said, p. 365: "A written contract, actually entered into, which is unconditional in its terms, cannot be varied by parol testimony, which tends to add a condition as one of the terms of the contract. But parol testimony is admissible to show that a written instrument was not signed or delivered as a concluded contract," etc.

*E. M. Ross* and *H. K. Toney*, for appellee; *Nathan T. Nall*, on the brief.

The question of admissibility of parol testimony to show that a written instrument was not signed or delivered as a concluded contract but was only signed and delivered to be held pending the happening of a contingency or the performance of some condition, is well settled contrary to the contention of appellants.

The testimony complained of by appellants was not introduced to vary or contradict the terms of the written contract, but to show that it was signed and delivered conditionally, *i. e.*, to be held pending the payment of the $3,000.00 for preliminary expenses. 82 Ark. 219, cited by appellants, is clearly against their contentions and supports the position of the appellees, also 128 U. S. 590-595, therein cited. See also 99 Ark.

223; 55 Ark. 115; 88 S. W. 899; 88 Ark. 383; 100 Ark. 360.

KIRBY, J. (after stating the facts). It is contended for appellants that the court erred in allowing the introduction of the oral testimony to vary and contradict the terms of the written contract for the sale of the bonds and the contention must be sustained.

It is admitted that the bid was submitted and the contract as set out for the purchase of the bonds duly executed by the parties and it is not claimed that there was any fraud in its procurement and cannot be claimed that there is any uncertainty or ambiguity in its terms. The oral testimony was contemporaneous with the making of the contract, which was written and executed thereafter and makes no mention even of any agreement on the part of appellants to furnish $3,000 for expenses of preliminary work and Mr. Gunter of appellant firm denies that there was any such agreement although he admits that afterwards when the commissioners desired an advance of that sum he was willing to procure and furnish it upon the execution of such a note by them as would be satisfactory.

(1) Parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument (1 Greenleaf on Evidence, Sec. 275) and as said in *Barry-Wehmiller Machine Co.* v. *Thompson*, 83 Ark. 283, "Antecedent propositions, correspondence and prior writings, as well as oral statements and representations are deemed to be merged into the written contract which concerns the subject matter of such antecedent negotiations, when it is free of ambiguity and complete." See also *D. K. & S. Rd.* v. *M. & N. A. Rd.*, 104 Ark. 488.

It is true it has been held that parol evidence is admissible to explain an indefinite term in a written contract, to add to a written contract some term or provision where the writing on account of fraud or mistake does not contain all of the contract. "But where the written contract is plain, unambiguous and com-

plete in its terms, it has been uniformly held by this court, that parol evidence is not admissible to contradict, to vary or to add to any of its terms.'' *Cox* v. *Smith*, 99 Ark. 218; *Collins* v. *Southern Brick Co.*, 92 Ark. 504; *Lower* v. *Hickman*, 80 Ark. 505; *Johnson* v. *Hughes*, 83 Ark. 105.

(2) The written contract sued on is complete in its terms and unambiguous and appellees by said parol contemporaneous evidence attempted to engraft another provision or condition upon it and then forfeit the contract for appellant's alleged failure to comply with such provisions not embraced and included in the contract, which was executed and delivered after the discussion of this matter, according to their statement, and which contains no mention even of it.

Such provision would be an addition to the written contract and vary its terms and the testimony relating thereto was incompetent and the court erred in permitting its introduction.

The judgment is reversed for said error and the cause remanded for a new trial.