SEELIG, RECEIVER, v. PHILLIPS COUNTY.

Opinion delivered June 11, 1917.

1. CONTRACTS—AMBIGUITY—ORAL TESTIMONY.—Where a written contract to construct a building was ambiguous in its terms, as to whether it provided for the installation of lighting, heating and plumbing, oral evidence was admissible to explain the intention of the parties.

2. COUNTIES—CONTRACT WITH—MISTAKE—PRACTICE.—A county and a contractor entered into a contract whereby the latter agreed to construct a courthouse and jail.    A dispute arose as to whether the contract provided for the installation of plumbing, wiring and heating. The contractor installed these things and claimed compensation for extras.    Held, under the statute, the county court should inquire into the correctness of the clause, and in determining that issue should apply principles of law or of equity, according as such principles which are applicable.    Held, further, that the evidence showing that the parties intended that the heating, plumbing and wiring be included in the contract, that the case called for the application of the reformation of a contract for mutual mistake.

Appeal from Phillips Circuit Court; *J. M. Jackson,* Judge; affirmed.

*Fink & Dinning,* for appellants.

1.   It was error to submit to the jury the issue as to whether or not the contract required the contractors to install the heating, plumbing and electric wiring, and in admitting oral testimony tending to show that this was the intention of the parties, and that this work should be included therein.    125 Ark. 492.    This case is conclusive of the issue here.    The item is really undisputed.

2.   The item of $195 for printing warrants is also undisputed and is properly verified.

*Moore, Vineyard & Satterfield,* for appellee.

1.   The contract was uncertain and ambiguous and oral testimony was admissible.    The question was properly submitted to the jury.    35 Ark. 156; 52 *Id.* 65; 89 *Id.* 368; 90 *Id.* 272; 93 *Id.* 191; 124 *Id.* 230.

2.   The contractors were to furnish *all material* and perform *all the work* in the building plans and specifications.    The judgment is right and should be affirmed, as there is no error.

On the 14th of November, 1913, a contract was entered into between L. R. Wright & Co., a partnership composed of L. R. Wright and O. L. Hitchcock, builders and contractors (hereafter, for convenience, called contractors), and Phillips County, through its commissioner, by which the contractors agreed to build a courthouse and jail at Helena, Arkansas, according to certain plans and specifications prepared by F. W. Gibb & Co. The contract price for the erection of these buildings was $249,000.

The American Surety Company of New York (hereafter, for convenience, called the surety company), executed a bond conditioned that the contractors would perform their contract. Before the completion of the building, the contractors became insolvent and left the completion of the building to the surety company.

When the contractors became insolvent, B. Seelig was appointed receiver for them. The contractors filed a voluntary petition in bankruptcy at Dallas, in the northern district of Texas, and were adjudged bankrupt, and the surety company was subrogated to their rights in the contract for the erection of the courthouse and jail in Phillips County, and the trustee in bankruptcy was directed to assign to the surety company all the claims of the contractors against Phillips County.

Seelig, as receiver, and the surety company filed a claim in the county court of Phillips County for certain extras, which they itemized, amounting in the aggregate to $12,070.26, which they claimed was due the contractors by Phillips County. The county court disallowed the claim, and on appeal to the circuit court a trial was had before a jury, which resulted in a verdict for the claimants in the sum of $1,158.88. Judgment was entered in favor of the claimants for that sum, and they have duly prosecuted this appeal, and are here insisting that they should have judgment for the balance of their claim.

The contract is exceedingly lengthy, and we will set out only such of its provisions as we deem necessary: Among others are the following provisions:

"That the contractor will supply all materials and perform all the work as shown on the drawings in the specifications prepared by F. W. Gibb & Co., Architects, for the sum of $249,000; which drawings and specifications are identified by the signatures of the parties hereto and become hereto a part of the contract; * * * that the work shall be done under the direction of the architect, and that his decisions as to the true construction and meaning of the drawings and specifications shall be final; * * * that all work shall be carried on under the direction and completed to the satisfaction of F. W. Gibb & Co., in conformity with the plans and specifications, his instructions and additional detailed drawings. The contractors to superintend and not to sublet the whole or any part of the work without the consent of the architect, and shall furnish all material, labor, etc., necessary to complete the work according to the drawings and specifications, and the architect is made the interpreter of same. * * * That the drawings and specifications shall include everything necessary to the proper completion and finishing of the building and proposals must be made for the entire completion of the building in strict accordance with the drawings and these specifications. * * * The drawings are to be considered a part of the specifications. * * * The heating, plumbing, electrical work and furniture will not be included in the general contract. The general contractors will, however, examine the drawings for the installation of this work in order to inform themselves as to the work to be done by other contractors. That the contractor, under these specifications, shall be held wholly responsible for the faithful execution of the same. The work when finished is to be turned over in a perfect and undamaged state. Proposals must be made for all the labor and material required for the entire completion of the building in strict accordance with the

drawings and these specifications. This contract, and the proposal pursuant to which it has been executed, shall take precedence over the specifications and plans in all matters wherein there shall seem to be any conflict.''

Then follows, under appropriate and separate heads, specifications for the materials to be used and the manner of the work to be done on the various parts of the buildings in order to make the same complete. The plumbing, steam heating and electric wiring are under separate heads, and there are provisions under each of these heads that the respective contractors shall furnish the materials and do the work provided under these separate heads in harmony with other contractors.

The commissioner issued a public notice for bids ''for the erection and completion of a courthouse and jail for Phillips County, at Helena, Arkansas. Drawings and specifications may be seen at the office of the undersigned commissioner, Helena, Arkansas; also, at the office of Frank W. Gibb & Co., Gazette building, Little Rock, Arkansas.''

The proposal of the contractors was, in part, as follows:

''We propose to furnish all labor and material to erect and complete your new courthouse and jail building in accordance with plans and specifications prepared by F. W. Gibb & Co., architects, Little Rock, Arkansas, and the addenda specifications submitted herewith for the sum of $249,000,'' etc., which proposal was accepted, and the contractors began work.

The contractors construed the contract as not requiring them to do the plumbing, electric wiring, and installing a heating plant, and after the work had progressed to the point where it became absolutely necessary that this work be done, the architect notified the contractors as follows: ''To equip said building with plumbing, electric wiring and heating plant in accordance with the plans and specifications and your contract. This work should have progressed along with the other work on the

building, but you seem to have ignored the same up to this date."

The contractors, in answer to this notice, after calling attention to various provisions of the contract providing for arbitration in case of disagreement between the parties as to extra work, reasonable value thereof, etc., set forth their contention as follows: "In pursuance of the provision first quoted, we accept the decision of the architects contained in the notice above quoted as controlling during the construction of the building, and we shall proceed to equip the building with the plumbing, heating and electric system required in accordance with the plans and specifications therefor. We do this, however, under protest, without waiving any right to be paid for such work in addition to the sum of $249,000, which we are to be paid for the work that we contracted to do. We shall expect Phillips County to pay us the reasonable value of the materials furnished and the labor performed in installing said plumbing, heating and electric system in accordance with the promise contained in our contract, and especially the above quoted portion thereof."

John I. Moore testified that he was the attorney representing Phillips County in the matter of making the contract between the commissioner and the contractors: that the contract was executed in his office, the architect, the commissioner, Judge Molliter (county judge), Mr. Hitchcock, a member of the contracting firm, and representing the contractor; and Mr. Andrews, their attorney, being present. And over the objection of appellant, he was permitted to testify as follows: That he told Mr. Hitchcock that the county was creating a liability that would absorb the entire revenue that had been levied for courthouse purposes up to the year 1931, and that under the specifications, the wiring, heating and plumbing were not included in the contract, and that it would be utter folly to go ahead and build a courthouse with no money with which to install the heating, wiring and plumbing; that for that reason he had made up his mind to advise

the commissioner to reject the contract for the reason that it would be better to have no courthouse than to have one without lighting, heating and plumbing; that Mr. Hitchcock reached in his pocket and brought out a piece of paper and said, "You are mistaken about that. We have discussed that and discovered that we could not sell the scrip, unless the heating, wiring and plumbing were included in the contract. I have figured that out and have the figures here amounting to something over $11,000."

Witness, continuing, said: "The contract was not changed at all. Mr. Hitchcock's contention was that the specifications were modified to the extent, or, that is, eliminated the clause that the contractors were not to do this work. The specifications are subject to changes."

After this conversation between the witnesses the written contract exhibited in evidence was entered into by the parties.

F. W. Gibb testified that after making the plans and specifications for the work, he found that it would exceed the amount of $250,000 in scrip, and that there would not be enough money to build it as designed. Some of the stone work and plastering were cut out, and he notified the contractors that it would be difficult to pay any extras and that the contract must include everything. Mr. Hitchcock told witness on the morning of the letting of the contract that he would bid a trifle under $250,000 complete, including heating, lighting and plumbing, and showed witness his figures on the work. On the night the contract was executed, Mr. Moore stated that it would be impossible to raise any money to pay for extras, and Mr. Hitchcock stated that his figures covered the construction of the building complete, and that the contract included the items of heating, lighting and plumbing, but he did not go into details as to the items covered. That about four months after beginning the work, witness learned for the first time, from the correspondence, that the contractors

were contending that they were not required to complete the wiring, heating and plumbing.

Judge Molliter and F. F. Kitchens, the commissioner, corroborate the testimony of Moore.

The court submitted the issue to the jury as to whether or not the contractors agreed to install the heating, plumbing and electric wiring, and instructed them that if they found that the contractors did so agree, that the verdict should be for the county on those items.

The appellants prayed that the court instruct the jury to return a verdict in their favor for what they might find to be a reasonable cost of installing the heating, wiring and plumbing.

The court directed the jury to return a verdict against the county in the sum of $1,158.88 for certain items that were not disputed, which was done.

WOOD, J., (after stating the facts). Appellants contend that the court erred in submitting to the jury the issue as to whether or not the contract required the contractors to install the heating, plumbing and electric wiring, and in admitting the oral testimony tending to show that it was the intention of the parties to the contract that this work should be included therein.

The certified copy of what is designated in the record as the contract consists of thirteen articles. In the first article, the contractors, for the consideration of $249,000, to be paid by the county, "agree to supply all the material and perform, in a practical manner, all of the work embraced in the adopted Phillips County, Arkansas, courthouse and jail building plans and specifications, as qualified and changed by the addenda thereto, the proposals of the contractors, and the provisions of this contract, which addenda, proposal, plans and specifications are hereby made a part of this contract."

In none of the articles of the general contract is there a provision to the effect that the heating, plumbing and electric work is not included. There is, however, in the plans and specifications, under the head of "General Con-

ditions,'' and under the special title, ''Heating, plumbing, etc.,'' this provision: ''The heating, plumbing, electrical work and furniture will not be included in the general contract.'' But there is, under the same head of ''General Conditions,'' this further provision: ''It is intended that the drawings and specifications shall include everything requisite and necessary to the proper completion and entire finishing of the building, notwithstanding every item involved in the work is not particularly mentioned. The work, when finished, is to be turned over in a perfect and undamaged state.''

Article 4 of the contract contains, among other things, the following provision: ''This contract and the proposal pursuant to which it has been executed, shall take precedence over the specifications and plans in all matters wherein there shall seem to be any conflict.''

Now, the contract, as we have seen, in its first article, requires the contractors to supply all the material and perform all the work embraced in the plans and specifications. There is also, in article 2, the provision that ''whenever any question shall arise, the decision of the architect shall control as to the correct interpretation of the plans and specifications during the execution of the work,'' subject to the right of the contractors to challenge his decision and to settle the question, in case of disagreement between them as to whether the work constituted extras, by arbitration.

Gibb, the architect, testified that it was his belief ''that L. R. Wright & Co. had the contract for the building complete, which included the installation of plumbing, heating and wiring,'' and he accordingly notified the contractors to proceed to do this work. In answer to this notification, the contractors protested that they were not required to do this work, but they, nevertheless, proceeded to do it, stating that they would expect pay for it as extras; but they did not demand that the controversy between them and the architect on this point be settled, as the contract provides, by arbitration.

Under the contract, as we have seen, the contractors were to supply "all the material" and to perform "all the work" called for by the plans and specifications, and the proposal of the contractors was to "furnish all labor and material to erect and complete the new courthouse and jail in accordance with plans and specifications." The building was not complete without the plumbing, heating and electric wiring. The contract required, and the proposal on the part of the contractors was to complete the building according to the plans and specifications. It could hardly be said that the provision, towit: "That the heating, plumbing, electrical work and furniture will not be included in the general contract, sets forth any plans or specifications for work to be done on the building. This provision is merely a declaration that these things shall not be included in the general contract. But the recitals in the general contract and the proposal pursuant to which it was executed show that the contractors were to complete the building. So there is at least a seeming conflict between the recital that the "heating, plumbing and electrical work" are not to be included in the general contract and the provision of the contract and the proposal which show that they are to be included. The contract provides that in case of such seeming conflict, the contract and the proposal must prevail.

(1) We have thus set forth all of these provisions and commented upon them for the purpose of showing that there was at least sufficient ambiguity in the contract to justify the court in submitting the issue to the jury as to whether it was the intention of the parties to the contract to include the plumbing, heating and electrical work, and to warrant the court in admitting the oral testimony to show that such was their intention.

The recent case of *Gunter & Sawyers* v. *Road Improvement District No. 1 of Grant County,* 189 S. W. 53, 125 Ark. 492, upon which counsel for appellants rely, is not in conflict with this holding, for there the written contract sued on was plain and unambiguous. In that

case, quoting from *Barry-Wehmiller Machinery Co.* v. *Thompson,* 83 Ark. 283, we said: "Antecedent propositions, correspondence, and prior writings, as well as oral statements and representations, are deemed to be merged into the written contract which concerns the subject-matter of such antecedent negotiations, when it is free from ambiguity and complete." But it is equally well settled that, "Where the provisions of a written contract are apparently conflicting, parol evidence is admissible to show the subject-matter of the agreement, the circumstances surrounding the parties at the time it was made, and their subsequent conduct under it, as a means of correctly interpreting the language employed." *Watkins* v. *Greer,* 52 Ark. 65. And, "Where a contract is ambiguous, parol evidence is admissible to explain the situation of the parties, so that the court may correctly apply the language used to the things described." *Wood* v. *Kelsey,* 90 Ark. 272. See, also, *Montgomery* v. *Ark. Cold Storage & Ice Co.,* 93 Ark. 191; *Livingston* v. *Pugsley,* 124 Ark. 432.

In *Jones* v. *Lewis,* 89 Ark. 368, we said: "Where the intention of the parties to a written contract does not clearly appear upon its face, the determination of the question should be left to the jury." Citing, *Massey* v. *Dixon,* 81 Ark. 337. See, also, *Haney* v. *Caldwell,* 35 Ark. 156.

(2) Moreover, the court was correct in its rulings for another reason. Under the Constitution the county court had exclusive original jurisdiction in the matter of disbursing money for county purposes. Const., art. 7, sec. 28. It had plenary power to "audit, settle and direct the payment of all demands against the county." Kirby's Digest, section 1375, act February 5, 1875.

The statute provides that all persons having demands against any county shall present the same, duly verified, according to law, to the county court of such county for allowance or rejection. From the order of the county court thereon appeal may be prosecuted as now

provided by law. Kirby's Digest, section 988. This act provides a special statutory proceeding by which claims against the county are to be allowed or rejected, and the county court, having exclusive jurisdiction over the subject-matter, could and should inquire whether the claim presented is just and correct, and in determining that issue should apply the principles of law involved. If the issue be one requiring the application of the principles of equity in its solution, then the county court, having plenary jurisdiction over the subject-matter, must apply those principles. If only the rules of law are involved, then the court must decide it according to those rules.

Therefore, even if we are mistaken in holding that the contract is ambiguous on its face, and even if the contract shows on its face that the plumbing, heating and electric wiring is not embraced in the contract, nevertheless the undisputed proof showed that it was the intention of both parties to the contract to include it, and if not included it was a mutual mistake. In this state of the record, the county in an adversary proceeding, would have had the right to go into a court of equity and have the contract reformed so as to express the intention of the parties to it. The county court, while not possessing equity jurisdiction, in this special proceeding could determine the issue before it according to the principles of equity involved and treat the contract as though it had been reformed, and thus decide the issue as to the correctness of appellants' claim according to the real intention of the parties to the contract. Although this was a special proceeding in a court of law, the decision on the issue, from the above viewpoint, required the application of the equitable doctrine of reformation so as to correct the mutual mistake of the parties and give effect to the contract as the parties intended it.

Appellants contend that the court erred in not allowing the sum of $195, the cost of printing the warrants issued by Phillips County in payment of the work done by the contractors. But John I. Moore testified: "If the

contractors had been willing to accept the ordinary form of county warrants, there would have been no necessity of having them printed, but a different form of scrip was required by the bond buyers, and it was agreed that all of this work was to be gotten up at the expense of the contractors. It is my recollection that they were to pay the cost of having them printed.''

This testimony is undisputed and it clearly establishes the fact that the contractors were not entitled to be reimbursed the amount paid by them for printing the warrants.

The judgment is correct, and it is therefore affirmed.

McCULLOCH, C. J., (concurring). I am willing to say, as is so clearly set forth in the opinion of the majority, that it was within the province of the county court, and of the circuit court on appeal, to hear the testimony for the purpose of establishing what the rights of the parties were, even to determine whether the written contract failed, under such circumstances as a court of equity would have granted relief by reformation of the written contract, to express what the parties intended to agree upon.

I would be willing to hold, too, that the contract, properly interpreted, required the construction company to put in the heating, plumbing and lighting apparatus for the gross sum stipulated for the completion of the building. But I do not think the contract is ambiguous so as to let in parol testimony to show what was really intended. The contract is unambiguous, and either did or did not embrace the heating, plumbing and lighting. I think it does include those items. At any rate, it was the duty of the court to construe the contract, and not to submit it to the jury to construe on oral testimony. *Mann* v. *Urquhart*, 89 Ark. 239.

I concur, therefore, in the affirmance, but I am unable to agree to all that was said in the opinion.