GOODWIN v. BAKER.

Opinion delivered July 2, 1917.

1. CONTRACTS—PRIOR NEGOTIATIONS—PAROL PROOF.—All prior negotiations leading up to a written contract are merged therein, and the writing can not be varied by proof of a parol contemporaneous agreement.

2. CONTRACTS—RENT—AMBIGUOUS TERMS.—Appellee leased lands from appellant, for a certain sum, but the contract provided that if appellee "failed on account of high water in June" that appellant agreed to take one-third of what was raised as rent. Held, that the words "in June" were ambiguously used, and that the parties contemplated an overflow during a later month, and that oral testimony was admissible to explain the full meaning of the parties.

Appeal from Randolph Circuit Court; J. B. Baker, Judge; affirmed.

T. W. Campbell and W. L. Pope, for appellants.

1. Oral evidence was not admissible to vary and contradict the terms of the written contract. 71 Ark. 185; 35 *Id*. 555; 95 *Id*. 131; 105 *Id*. 50; 78 *Id*. 333; 78 *Id*. 574; 79 *Id*. 256; 94 *Id*. 130; 102 *Id*. 428; 106 *Id*. 462, and others.

2. Appellee could read print, and the contract was typewritten. He had ample opportunity to read it. 71 Ark. 185; 35 *Id*. 555. If a mistake was made, it was appellee's own negligence, nor was it mutual. 60 Ga. 383; 71 Ark. 185; 9 Enc. Ev. 344.

*J. W. Meeks*, for appellee.

1. Parol testimony was admissible to show that there were other considerations than those recited and what they were. 90 Ark. 426; 18 *Id*. 65; 53 *Id*. 4; 55 *Id*. 12. The contract was reduced to writing only in part. 62 Ark. 337; 75 *Id*. 94; 35 *Id*. 156; 27 *Id*. 510. The contract gave the option to pay cash, or crop-rent in event of the overflow of the lands after June 1.

A separate or independent contract may be proven verbally. 91 Ark. 383; 71 *Id*. 408.

Where a contract is entire, and a part only in performance is reduced to writing, parol proof of the entire contract is competent. 2 Wharton on Ev., § 1015; 1 Greenl. on Ev., § 284-a, 55 Ark. 112.

### STATEMENT BY THE COURT.

Appellants sued the appellee on a promissory note for $400, with interest after maturity, due December 1, 1915. Appellee admitted the execution of the note, but alleged that the note was given to appellants as rent for their farm for the year 1915, and that it was expressly agreed as a condition of the rental contract that in the event the lands rented should be flooded or overflowed at any time after June 1, 1915, the note was to become void, and that in that event appellants would receive as rent in lieu of the note the customary one-third and one-fourth parts of the crops grown on appellants' land. Appellee further averred that after June 1 of the year 1915

there came an overflow of extraordinary proportions, greatly damaging the crops on the lands, and that appellee gathered and delivered appellants' one-third of the crops grown on the lands that year and the same was by appellants received in full payment of the rent for that year.

There was set up and made a part of appellee's answer a written contract, which is as follows:

"This contract made and executed this the 12th day of November, 1914, by and between F. H. & W. J. Goodwin, parties of the first part, and James F. Baker, party of the second part, of Randolph County, Arkansas, witnesseth, that the said F. H. Goodwin and W. J. Goodwin hereby rents unto the said James F. Baker the following described tract of ground (describing it). This is all the cleared land on the said Goodwin farm. To hold for the term of the balance of the year 1915. * * * James Baker has given his promissory note for the sum of $400 for the said rent of farm on this condition: First, the said James F. Baker is to cultivate the land in a good husbandmanlike manner, and the said Goodwins agree that if the said Baker fails to make a good crop on account of drouth in the neighborhood, or if James F. Baker fails on account of high water in June that the said Goodwin agrees to take one-third of the crop that the said Baker cultivated for his rent. And said Baker is to fix the fence where that is necessary to keep stock out of the said crop, * * * and it is agreed when the said Baker note came due on the first day of December, 1915, if he fails to settle the same it is understood the said Goodwin shall collect said note with 10 per cent. interest from due." Signed by the parties.

The appellee testified that he executed the note in suit; that at the time he executd same he had an agreement with appellants in regard to the note and the rent of the farm. Appellants objected to the appellee testifying as to the terms of the rent contract because the same was in writing. The court overruled the objection and the appellee continued his testimony, which was in sub-

stance that the Goodwins wanted cash rent for their farm and appellee was unwilling to pay cash rent for fear of drouth or overflow. Goodwin said it was very common for the land to overflow in the spring, but that he would guarantee it against drouth or overflow from June on. Here appellants renewed their objection, which the court overruled, and the appellee continued as follows: All their contract was: not in writing, but there was a contract in writing between the Goodwins and Baker for the rent of that land for that year, which the appellee identified as the contract set forth above. He stated that Joe Johnson drew the contract. He happened to be at Goodwin's when appellee and Goodwin agreed on the rent, and they requested Johnson to make a memorandum of the contract and to make a written contract when he got to his office. This Johnson did. The written instrument introduced in evidence included only a part of the agreement. The instrument was not read to him before he signed it. It was a month or six weeks after appellants and appellee had arrived at their agreement and instructed Johnson to draw up their contract before it was presented to appellee for his signature. Appellee and appellants gave to Johnson what they wanted to put into their contract, but Johnson did not put in the contract what they gave him. What they agreed on was that Goodwin was to guarantee against drouth and overflow from June on. If a drouth or overflow came after June appellee was to pay a third and fourth. By a third and fourth is meant third of corn and fourth of cotton. An overflow came in August, 1915, and ruined the crop on most of the land. Appellee made only nine loads of corn, and cribbed Goodwin three loads of it, and told his son-in-law about it. Left the farm when the overflow came in August. Appellants did not have any one there to look after the farm for them. Witness did not notify Goodwins about putting the corn in the crib because he didn't know where Goodwin was. Goodwin's son-in-law was there and nailed the corn up. Didn't know what became of the corn.

Other witnesses on behalf of the appellee testified, over the objection of appellants, substantially corroborating the testimony of the appellee, to the effect that if there was an overflow or drouth after June 1 the appellants, instead of cash rent, were to take a third of the corn and a fourth of the cotton.

Johnson testified on behalf of the appellants that he drew the contract in evidence and drew it in accordance with instructions from the parties to it. He made a skeleton of the contract on a tablet, took it home and made it up and mailed it to appellee Baker and Baker returned it to witness and said witness had made a mistake in writing the year 1914 when it should have been 1915. Witness then corrected the mistake in Baker's presence and then appellants and appellee all signed the contract. The mistake in the year was the only mistake mentioned by Baker. He further testified that they said they didn't hardly ever remember an overflow coming after June, and it was the understanding that if the overflow came after June the Goodwins were to take crop rent. They guaranteed against overflow after June.

W. J. Goodwin testified that the contract in evidence is the contract which was made between the witness and his son and appellee Baker for the rent of their land for the year 1915. The agreement of the parties was that if there came a general drouth and damaged the crops, or if there came an overflow in June appellants were to take one-third of the crop as rent, otherwise appellee was to pay them $400 in cash. There never was an agreement between the parties that appellants were to take one-third of the crop for the rent if the overflow came after June. Appellants never got any part of the crop of 1915. They were in Mississippi during that year. The contract was agreed on at appellants' farm. Johnson wrote it out at the time on a tablet, carried it away with him and prepared the typewritten contract about a month or six weeks thereafter and it was signed by the parties. He demanded payment of the rent soon after returning from Mississippi. Wrote the appellee two letters; got no re-

ply. When appellants got back from Mississippi there was some corn in the crib. Witness did not know where the corn came from nor who put it there. Appellants did not use any part of it.

The verdict and judgment were in favor of the appellee.

WOOD, J., (after stating the facts). Appellants contend that the court erred in permitting the introduction of oral testimony which tended to vary and contradict the terms of the written rental contract executed by the parties, and whether or not the court erred in permitting oral testimony to be introduced is the only question for our decision.

(1) In *Graves* v. *Bodcaw Lumber Co.*, 129 Ark. 354, we said: ''It is Hornbook law that all prior negotiations leading up to the written contract are merged therein, and, further, that evidence of a contemporaneous parol agreement is not competent to vary the terms of the written agreement.''

And in *Seelig, Receiver,* v. *Phillips County,* 129 Ark. 473, we quoted *Barry-Wehmiller Machine Co.* v. *Thompson,* 83 Ark. 283, as follows:

''Antecedent propositions, correspondence and prior writings, as well as oral statements and representations, are deemed to be merged into the written contract which concerns the subject-matter of such antecedent negotiations, when it is free from ambiguity and complete.'' And in that case we also quoted from *Watkins* v. *Greer,* 52 Ark. 65, as follows: ''Where a contract is ambiguous parol evidence is admissible to explain the situation of the parties so that the court may correctly apply the language used to the things described.''

In another one of our most recent cases, *Livingston* v. *Pugsley,* 124 Ark. 432, 436, we said: ''While the terms of the contract can not be extended by parol evidence, such evidence may be admitted to show the circumstances under which the contract was executed in order to construe the language thereof.''

And in *Wood* v. *Kelsey,* 90 Ark. 272, we said: "Courts may acquaint themselves with the persons and circumstances that are the subject of the statements in the written agreement, and are entitled to place themselves in the same situation as the parties who made the contract so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and of the correct application of the language to the things described."

(2) There can be no misapprehension as to these plain principles of law. The only difficulty we find is to determine whether or not this contract, on its face, when construed as a whole, as it must be, is ambiguous so as to call for the application of the rule as to the admissibility of oral testimony as announced in *Watkins* v. *Greer, Wood* v. *Kelsey,* and *Livingston* v. *Pugsley,* above mentioned.

Now the contract, upon its face, shows that it was with reference to the renting of a certain tract of land for the year 1915, and the contract clearly shows that the parties to it had in contemplation the payment of money rent in the event that the tenant Baker was not hindered on account of the drouth or overflow from making a good crop, for the contract provides: "Baker is to cultivate the land in a good husbandmanlike manner and the said Goodwins agree that if the said Baker fails to make a good crop on account of drouth in the neighborhood or fails on account of high water in June that the said Goodwins agree to take one-third of the crop that Baker cultivates for their rent."

In *Paepcke-Leicht Lumber Co.* v. *Talley,* 106 Ark. 400, we held: "While the rule is that it is the duty of the trial court to construe a written contract and declare its terms and meaning to the jury, when the contract contains words of latent ambiguity, or when technical terms are used or terms which by custom and usage are used in a sense other than their ordinary meaning, oral testimony is admissible to explain the terms or words used."

If the parties to the contract contemplated that there should be no cash payment of rent on the land for the year 1915 in the event that there was a drouth or overflow during that year which should cause a failure or partial failure of appellee's crop, notwithstanding his good husbandry, as seems manifest from certain language of the contract, then the words "in June" are ambiguous. For if these words are given a strict literal interpretation, the appellee would be liable for the cash rent even though an overflow might not occur in the month of June but did occur on the first of July or some succeeding month which resulted in the destruction of appellant's crop. Therefore, we are convinced that the words "in June" were not used in their narrow literal sense, but that inasmuch as it appears from the testimony that the overflows which sometimes result in disaster to the crops usually came in June that these words were used rather in the sense of designating the overflows rather than in the sense of limiting the time when the overflow should take place. Such being the case, the oral testimony was admissible to show the situation of the parties, the subject-matter of the contract and all the circumstances so as to judge the meaning of their words and to ascertain their real intent in using them, which intent in the last analysis constitutes their contract.

The trial court was correct in adopting this view in its rulings in the admission of testimony and its instructions to the jury. The judgment is therefore affirmed.