Washington County *v.* Day.

4-5412                                    126 S. W. 2d 602

Opinion delivered March 27, 1939.

*J. W. Trimble* and *O. E. & Earl N. Williams,* for appellant.

*Pearson & Pearson,* for appellee.

HUMPHREYS, J. As the facts are undisputed only a question of law is involved on this appeal, and that question is, must a landowner accept a warrant issued under an order of a county court payable out of a fund showing a large net deficit in payment of adjudicated damages for taking and using a part of his land for public highway purposes, or may he refuse such a warrant and require that a warrant be issued to him payable out of an available fund containing a net balance sufficient to pay his adjudicated claim.

In the trial of the cause in the circuit court of Washington county appellant and appellees filed an agreement entered into on September 17, 1938, as follows:

"It is hereby stipulated and agreed by the parties hereto that the county court of Washington county by its order of May 29, 1937, and upon the petition of the State Highway Commission of the state of Arkansas, did condemn and take certain lands of the plaintiffs herein (appellees') for the purpose of changing and widening state highway No. 62, the same being known as Fayetteville-Prairie Grove Road; that said order of the county court taking plaintiffs' (appellees') lands was made and rendered under the authority and procedure as set forth in §§ 6905 and 6968 of Pope's Digest of the Statutes of the State of Arkansas.

"That plaintiffs (appellees) filed their claim in the county court for the damages sustained for lands taken and the damages caused to the remaining lands of the plaintiffs in the sum of $2,500; that said claim was allowed by the county court in the sum of $750; that plaintiffs appealed from this order and the cause was tried in the circuit court of said county, which court on the 13th day of November, 1937, rendered judgment against said county for the sum of $1,900.

"From this judgment the county appealed to the Supreme Court. The Supreme Court on the 9th day of May, 1938, affirmed the judgment of the circuit court. The mandate of the Supreme Court was filed in the

Washington circuit court and by court order was spread of record.

"That on the 10th day of June, 1938, the plaintiffs (appellees) filed in the county court of said Washington county a certified copy of the judgment, of said circuit court; a certified copy of the mandate of the Supreme Court; and a certified statement of the judgment, interest and costs, in the total sum of $1,999.55. On said June 10, 1938, said county court ordered said sum to be paid out of the State Apportionment or Gasoline Turnback Fund. That the plaintiffs declined to accept such warrant and appealed same to the circuit court, on the claim that said warrant should be issued as provided in § 6968 of Pope's Digest.

"That on January 15, 1938, the quorum court appropriated $5,000 or so much thereof as might be needed from State Apportionment or Gasoline Turnback Fund to pay for rights-of-way of State and Federal Highways and damages caused thereby."

Other facts undisputed relate to the state of the county finances, that is the balances and outstanding warrants in the three funds of the county, namely: The County General; the Road and Bridge; and the State Apportionment or Gasoline Turnback Fund, which is as follows:

|  | Date of $1,900 Judgment in Circuit Court | Date of County Court Order on Turnback Fund | Date of Circuit Ct. Judgment vs. General Revenue |
|---|---|---|---|
|  | 11/13/1937 | 6/10/1938 | 9/17/1938 |
| General Revenue Balance, Cash... | $12,917.55 | $12,360.41 | $14,147.46 |
| Road and Bridge Balance, Cash... | $ 1,822.17 | $ 6,485.86 | $ 66.37 |
| Turnback Net Deficit | $55,670.36 | $40,908.66 | $56,161.68 |

Another fact appearing in this record which is undisputed is that the Turn Back Fund out of which the county court directed that a warrant be issued in payment of appellees' judgment could not be paid for about three and one-half years as the deficit in that fund could not be overcome for that period of time.

Under the undisputed facts cited above the circuit court found that on the 17th day of September, 1938, the only available fund out of which the judgment might be paid was the County General Fund, that on that date the County General Fund had a cash net balance of $14,147.46, and that on that date there was only a cash net balance of $66.37 in the Road and Bridge Fund, and on that date the State Apportionment or Gasoline Turn Back Fund disclosed a net deficit of $56,161.68.

Based upon this finding, supported by the undisputed facts, the circuit court declared that under the law appellees were entitled to a warrant drawn against the County General Fund for $1,999.55, which amount covered the judgment and interest thereon, in payment of their judgment, and ordered and adjudged that the county clerk issue a warrant against the County General Fund for said amount payable to them, and to deliver same to them upon demand, and ordered and adjudged that the county treasurer pay same out of the County General Fund in his hands.

From this judgment appellant has duly prosecuted an appeal to this court.

Counsel for appellant admit that when subdivision 1, of paragraph (h) of § 1 of act 63 of the Acts of 1931 as amended by § 2 of Act 48 of the Acts of 1933 is read in connection with the last part of § 6968 of Pope's Digest, which is a part of the Act of May 31, 1911, there are three county funds out of which appellees' judgment might be paid, but contend that it was within the discretion of the county court to determine out of which fund it should be paid.

In support of this contention they cite § 2906 of Pope's Digest. It is true that this section confers broad powers upon the county court and makes him in effect the fiscal agent of the county, but it does not make the acts, judgments, final orders and proceedings of county courts absolute. All such acts, judgments, final orders and proceedings of county courts are to be exercised under the superintending control of the circuit courts. Section 2860 of Pope's Digest provides:

"The circuit courts shall exercise a superintending control and appellate jurisdiction over county, probate, court of common pleas and corporation courts and justices of the peace; and shall have power to issue, hear and determine all the necessary writs to carry into effect their general and specific powers, any of which writs may be issued upon the order of the judge of the appropriate court in vacation."

Section 2867 of Pope's Digest provides:

"They (referring to circuit courts) shall have superintending control over the judgments, final orders and proceedings of county courts, and county boards and officers."

If it be true that the county court was vested with discretionary power to say from which of the three funds appellees' judgment might be paid, in doing so he must necessarily exercise a sound discretion and not an arbitrary discretion. In exercising this discretion in the instant case the county court directed the issuance of a warrant payable out of a fund which did not have any money with which to redeem the warrant for about three and a half years, whereas he could have issued a warrant in payment of appellees' judgment out of an available fund which showed a net cash balance of $14,147.46. This action on the part of the court was arbitrary in view of the fact that in the exercise of a sound discretion he might have directed the issuance of a warrant out of an available fund that showed a net cash balance of $14,147.46. If he had exercised a sound discretion it would have enabled the appellees to collect their judgment and this record does not disclose that the payment thereof out of the General Revenue Fund would have prevented the usual and orderly functions of the county government. In other words the record does not reflect that the payment of appellees' warrant out of the General Revenue Fund would have prevented the county from paying all the statutory claims against the county. Of course it would have been the duty of the county judge to direct that a warrant be issued against the Road and Bridge Fund to pay the judgment of appellees instead of direct-

ing the issuance of a warrant payable out of the General Revenue Fund because the latter part of § 6968 of Pope's Digest provides as follows:

"Provided further, all damages allowed under this act shall be paid out of any funds appropriated for roads and bridges, and if none such, then to be paid out of the General Revenue Fund of the county."

Our construction of this provision in § 6968 of Pope's Digest is that as between the Road and Bridge Fund and the General Revenue Fund, the damages for taking appellees' land for public use must be paid out of the Road and Bridge Fund, if there is sufficient money in said fund to do so, and that the county court was authorized to use the money in the General Revenue Fund for such a purpose when the money in the Road and Bridge Fund was insufficient to do so. The undisputed facts in this case show that there was only $66.37 in the Road and Bridge Fund on September 17, 1938.

The circuit court was correct in holding that appellees were not required to accept a warrant in payment of their judgment in taking their land for public purposes on a fund which showed a net cash deficit of $55,670.36 and directing the county clerk to issue a warrant in payment of said judgment against the General Revenue Fund and in directing the county treasurer to pay said warrant out of said fund then in his hands.

The judgment of the circuit court is, therefore, affirmed.

GRIFFIN SMITH, C. J., dissents.