LOGAN COUNTY *v.* ANDERSON.

4-6402                                               150 S. W. 2d 197

Opinion delivered April 14, 1941.

*Ray Blair, R. S. Dunn* and *Charles I. Evans,* for appellant.

*Paul X. Williams,* for appellee.

HOLT, J. This cause was tried below on the following agreed statement of facts:

"On March 1, 1937, the county court of Logan county, Arkansas, duly made and entered its order calling in all of the outstanding county road district warrants of Logan county for the purposes authorized by law. Said call-in order and all proceedings incident thereto and in connection therewith were in strict compliance with the law, so far as said call and proceedings apply to the county road district warrants involved in this cause.

"There are twenty-four political townships in Logan county, and, at the time of the issuance of the warrants hereinafter mentioned and set forth and here involved, each political township in Logan county was a separate road district. The three mill county general road tax, when voted, levied and collected, was duly apportioned to the respective road districts in the county. Each road district was served by a road overseer who was elected by the people in the regular biennial election.

"Claims for work done, services performed and material furnished on roads in the respective road districts were required to be made in conformity with the law in regard to claims against the county; they were required to be duly verified, filed with the county clerk and acted upon by the county court.

"Matt Anderson *et al.* (appellees), shown on the list hereto attached, complied with the call-in order aforesaid and delivered to the county clerk of Logan county road district warrants of Logan county, Arkansas, for the year, against the district, in the amount and carrying the warrant number indicated in the attached list which is made a part hereof; and the county clerk issued to each his receipt for the warrant so surrendered, the number of the clerk's receipt also appearing on the attached list.

"The warrants issued, as shown by said list, were for services performed, material furnished or work done on the county roads of Logan county and the claimants performing said work, rendering services or furnishing material were issued road district warrants of Logan county as shown by the attached list. A majority of said warrants now being owned by parties who were not the original claimants.

"All county roads of Logan county, either lead from farm to market or intersect some road that leads to market.

"Upon examination of said warrants and of other proof the county court on June 1, 1937, canceled said warrants and refused to re-issue the same.

"The county clerk of Logan county preserves all claims filed against the county for a period of ten years without reference to whether the warrants are paid or not, so that the county clerk now has on hand all claims against the county filed within the past ten years, including the claims on which the warrants herein listed and here involved were issued.

"Each warrant issued and each claim on which warrant was issued was in excess of the county and road district revenues for the respective fiscal year indicated. The road districts of Logan county were numbered and did not carry the name of the respective political township. The county officials and all interested parties knew the number as well as the name of said townships and road districts.

"Specimen copies of claims and orders of allowance thereon, on which the said road district warrants, were issued, are hereto attached and made a part hereof.

"Neither party shall be precluded by this stipulation from making any other, further or additional proof which is deemed necessary and proper for the full development of the facts in this case."

Leon Munn, county clerk of Logan county, testified: "Back there when we had road districts in Logan county, we knew, the county clerks knew, the road overseers of the respective townships and road districts and when the road overseer would come in and file a claim or make out his report, we knew which road district he belonged to and in making the claim out we made it against his road district, and maybe the county judge would come along and allow this claim and order it paid out of that road district," and sometimes the county judge ordered these claims paid out of the Highway Turnback Fund.

As indicated the claims, with which we are concerned here, grew out of services performed by the various road overseers, in the various townships of the county, and for supplies furnished. Each claim bears the township road district number, the amount of the claim, the verification, and the order of allowance.

From the order of the county court on June 1, 1937, canceling said warrants and refusing to re-issue them, claimants (appellees here) appealed to the circuit court and upon a trial before the court, sitting as a jury, all parties being present and represented by counsel, the court found that all original warrant holders, or claimants, should receive re-issued warrants for the full amount and be paid in full by the county treasurer "out of any funds in his possession, or coming into his possession for the purpose of paying same," but that all claimants who were not original warrant holders, should be paid on the basis of 50 per cent. of the amount of the original claim and entered judgment accordingly.

Appellant, Logan county, has appealed and a cross-appeal has been filed by those claimants who are not original claimants.

The contentions of the parties are stated by appellees, in their brief, in the following language:

"In this case, Logan county, the appellant, contends that none of the claims should be paid from the turnback —*i.e.,* it urges that the claims should not be paid at all. It contends that the contracts on which the claims are based were contracts for payment from a particular fund, the Township Road District Fund—that the contracts were made after the fiscal county revenue was exhausted and that under Amendment No. 10 to the Constitution, the contracts were and are void.

"The appellees, who are also the cross-appellants, contend that the claims being *bona fide* claims for work done on the farm-to-market roads and payable from the Turnback Fund; that they were erroneously written against the Township Road District Fund and should have been written against the Turnback Fund originally; that the statutes of the state of Arkansas direct their payment from the Turnback Fund and that the circuit court erred in reducing their claims by 50 per cent. when Logan county admittedly received full value."

All of the warrants in question were issued in the years from 1926 to 1934, inclusive, and "each warrant issued and each claim on which warrant was issued was in excess of the county and road district's revenues for the respective fiscal years indicated."

Constitutional Amendment No. 10 provides: ". . . no county court . . . shall make or authorize any contract or make any allowance for any purpose whatsoever in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made; . . ."

Each claim involved here is signed and sworn to by the original claimant and bears the approval and order of allowance of the county court and evidences the contract between the parties. Each claim evidences

the fact that a certain numbered road district in Logan county is indebted to the claimant in a certain sum for services performed or for material furnished, and each of these warrants specifies payment from a particular fund, that is the Township Road District Fund.

As to the jurisdiction and power of county courts, in *Watson and Smith* v. *Union County*, 193 Ark. 559, 101 S. W. 2d 791, this court said:

"By § 28, art. 7, of our Constitution, county courts 'have exclusive original jurisdiction in all matters relating to county taxes, . . . the disbursement of money for county purposes, and in every other case that may be necessary to the internal improvement and local concern of the respective counties. . . .' Section 2279, Crawford & Moses' Digest, provides: 'The county courts of each county shall have the following powers and jurisdictions: "Exclusive original jurisdiction in all matters relating to county taxes, . . .; to audit, settle and direct the payment of all demands against the county; . . . to disburse money for county purposes, and in all other cases that may be necessary to the internal improvement and local concerns of the respective counties. . . .'"

"We have many times held that the county court acts judicially in allowing claims. *Monroe County* v. *Brown,* 118 Ark. 524, 177 S. W. 40; *Seelig* v. *Phillips County,* 129 Ark. 473, 196 S. W. 456. . . . A similar situation existed in *Leathem & Co.* v. *Jackson County,* 122 Ark. 114, 182 S. W. 570, Ann. Cas. 1917D, p. 438. It was there held, to quote syllabus, as follows: 'When a county court is authorized to do an act purely administrative in its character, such as make a contract, it may also ratify such act, when done by the county judge in vacation, and thereby bind the county as effectively as if the contract was made by the county court in the first instance.'

"Contracts of the kind in question are within the exclusive jurisdiction of the county court, . . ."

Claimants here accepted the warrants in question which were drawn against a specific fund, "The Town-

ship Road District Fund," which was created out of the apportionment of the three mill road tax. The county court in approving and allowing these claims acted judicially. It possessed original jurisdiction. Appellees accepted the w a r r a n t s as issued without complaint.

Once approved by the county court, its judgments became final when not appealed from. Here each claimant swore that the particular road district, indicated in the affidavit, was indebted to him. As to whether the county court abused its discretion in ordering the warrants to be drawn against the particular fund, in this situation, cannot be a matter for consideration here.

In the case of *Anderson* v. *American State Bank,* 178 Ark. 652, 11 S. W. 2d 444, the county court of Franklin county entered into a contract and issued warrants in payment, to be paid out of the Turnback Fund, a specific fund. There this court said: "The warrant itself shows that this claim was to be paid out of the highway fund derived from the state revenue, and it could not be paid out of the general revenues of the county. It was not the intention that it should be so paid, and, for that reason, the revenue of the county derived from taxation and the expenditures of the county are immaterial here. . . ."

Further on in the opinion it is said (p. 658): "So in this case the owner of the warrant must look alone to the highway fund in Franklin county for its payment. The holder of the warrant could not look to any other fund, and it could not be paid out of any other fund, . . ."

Counsel for appellees in support of the judgment of the trial court, and of their contention that the county court in each of its orders on the claims involved abused its discretion by not ordering the warrants issued against the Turnback Fund, rely strongly on the recent case of *Washington County* v. *Day,* 197 Ark. 1081, 126 S. W. 2d 602. We are of the view, however, that the principles announced there do not apply here. In that case the county court made an order condemning lands of the

claimant for use as a highway right-of-way. There was no contract between the county court and the landowner. The landowner filed a claim against the county for damages for taking his land; his claim was against no particular fund. The landowner contended that the warrant issued to him in payment for damages should be issued in accordance with provisions of § 6968 of Pope's Digest. That section provides: ". . . Provided further, all damages allowed under this act shall be paid out of any funds appropriated for roads and bridges, and if none such, then to be paid out of the general revenue fund of the county."

There were three accounts in Washington county at the time: the general revenue account, the road and bridge account, and the turnback account. The county court ordered the claim paid out of the turnback, which was overdrawn for an estimated three years. It appeared that two of the above accounts against which the claim might have been allowed had ample funds with which to pay claimant, but the county court refused to order the claim paid out of either of these funds and directed its payment out of the turnback account which showed a deficit of more than $40,000. Under the facts in that case, this court held that the action of the county court was arbitrary and an abuse of discretion under the provisions of the statute, *supra*.

We come now to the contention of appellees that the warrants in question should have been re-issued under the provisions of act 299 of the Acts of 1939. It is our view, however, that this act does not control here.

Section 1 of the act provides: "Where in any county in this state on January 1, 1939, there were outstanding warrants that had been issued in excess of the revenues received for the Highway Turnback or the County Three Mill Road Funds, for the years 1937 and 1938, or where *bona fide* claims or contracts made for which there were no warrants issued as of January 1, 1939, that said claims or contracts were also in excess of the revenues against said funds, that said warrants, claims and contracts, if *bona fide* claims, warrants or

contracts, shall be validated . . ." and said warrants shall be paid out of the Highway Turnback Fund.

It is apparent that the first part of the above quoted section undertakes to validate all invalid outstanding warrants issued against, and in excess of, the turnback funds or the "three mill road funds," for the years 1937 and 1938. The second part of the section undertakes to validate all contracts or claims on file, where warrants had not been issued as of January 1, 1939, and where said claims or contracts were also in excess of the revenues "against said funds."

Appellees contend that they come within the terms of this second part of the above quoted section. We think it clear that the words "said funds" in the second part of the above quoted section refer to the turnback and three mill road funds for 1937 and 1938, mentioned in the first part, and that the Legislature intended by this act to validate invalid outstanding warrants issued in excess of the revenues received for the highway turnback or the county three mill road funds, for the years 1937 and 1938, and also to validate contracts and claims, where warrants had not been issued prior to January 1, 1939, for the years 1937 and 1938 only, because made "in excess of the revenues against said funds."

Since the warrants or contracts involved here were not issued or made in 1937 or 1938, but during the period from 1926 to 1934, we think it clear that act 299, *supra*, has no application.

We do not at this time determine the effect of act 299, insofar as it relates to the Three Mill Road Tax Fund, for the reason that, as above indicated, the express language of the act limits its application to warrants issued during 1937 and 1938.

All parties agree that these warrants were issued by the county in good faith for labor performed or for material furnished and that the intention was that they should be paid. However, meritorious these claims may be, the fact remains that at the time they were made warrants drawn in payment exceeded the revenue in the

particular fund against which drawn, for the year in which drawn, and under the plain terms of amendment No. 10, *supra*, were absolutely void.

The judgment on appeal is reversed, and the cause is remanded with directions to the trial court to enter judgment not inconsistent with this opinion. This order on direct appeal necessarily disposes of the contention of appellees on their cross-appeal.