CULP *v.* SCURLOCK, COMMR. OF REVENUES.

5-793                                          284 S. W. 2d 851

Opinion delivered December 19, 1955.

*French & Camp,* for appellant.

*O. T. Ward* and *Herrn Northcutt,* for appellee.

GEORGE ROSE SMITH, J. This is an action by the appellants for a writ of mandamus to compel the Commissioner of Revenues to issue permits authorizing the appellants to sell cigarettes at retail without payment of an Arkansas excise tax thereon. The appellants have places of business located either within three hundred feet of the Arkansas-Missouri state line or within a city adjacent to that line. Missouri does not now collect a tax upon the sale of cigarettes. The appellants, in claiming an exemption from the Arkansas tax, rely upon the last sentence in the following section of Act 249 of 1951, Ark. Stats. 1947, § 84-2304:

"There is hereby levied the following excises or privilege tax, to-wit: on all cigarettes a tax of three dollars ($3.00) per thousand cigarettes is hereby imposed. Provided, whenever there are two adjoining cities of a population of five thousand or more separated by a state line, the tax on cigarettes sold in such adjoining Arkansas city shall be at the rate imposed by law on cigarettes sold in such adjoining city without Arkansas, but not to exceed three dollars ($3.00) per thousand cigarettes. Provided, further, that the tax on cigarettes sold in Arkansas within three hundred (300) feet of a state line, or in any city in Arkansas which adjoins a state line, shall be at the rate imposed by law on cigarettes sold in the adjoining state, but not to exceed three dollars ($3.00) per thousand cigarettes."

Before examining the statute we mention a preliminary matter. It is suggested by the appellee's pleadings and brief that the issuance of a writ of mandamus would not terminate the dispute, since the form of retail permit used by the revenue department merely authorizes the holder to sell cigarettes, without reference to the matter of taxation. Even so, the complaint may equally well be treated as one for a declaratory judgment—a remedy peculiarly appropriate to controversies between private

citizens and public officials about the meaning of statutes. Ark. Stats., § 34-2502; *Quinones* v. *Landron,* (CCA 1) 99 F. 2d 618; *Alabama State Milk Control Bd.* v. *Graham,* 250 Ala. 49, 33 So. 2d 11; *Railroad Com'n* v. *Houston Nat. Gas Corp.,* (Tex. Civ. App.) 186 S. W. 2d 117. This complaint states all the facts necessary to a petition for a declaratory judgment, and it is the statement of facts rather than the prayer for relief that makes up the cause of action. *Grytbak* v. *Grytbak,* 216 Ark. 674, 227 S. W. 2d 633. Since the effect of a declaratory judgment in this case will be to terminate an actual controversy in a matter of public interest, it is manifestly desirable that the case be decided on its merits. See Ark. Stats., § 34-2505.

The appellee's argument against what seems to be the plain meaning of the exemption clause in question is twofold. First, it is insisted that since the statute provides that the Arkansas tax "shall be at the rate imposed by law" in the adjoining state, the legislature meant to condition the proviso upon the existence of at least some tax rate in the adjoining state. Hence it is argued that although a lower rate applies along the border of neighboring states that impose a cigarette tax, such as Oklahoma and Texas, it does not apply when the sister state has no tax at all, as in the case of Missouri.

The history of this section of the law conclusively refutes the appellee's contention. By Act 152 of 1929 the legislature imposed a tax upon the sale of cigarettes and directed by § 29 thereof that the first revenue arising from the tax should be paid into the Common School Fund. Section 30 of that act contained this significant language:

"Wherever there are two adjoining cities of a population of five thousand or more separated by a State line, the tax on tobacco products sold in such adjoining Arkansas city shall be at the same rate imposed by law on tobacco products sold in such adjoining city without Arkansas. Provided, however, that in the event there is no tax imposed by law upon tobacco products sold in

such adjoining city without Arkansas, then the schools in such adjoining city in Arkansas shall not be entitled to participate in the revenue derived from this Act."

It will be observed that the 1929 statute contained the very language now relied upon by the appellee: "the tax shall be at the same rate imposed by law" across the state line. Yet the legislature obviously meant for these words to include the situation in which there was no tax imposed on the other side of the line; for in the next sentence it was provided that in such a situation the local Arkansas schools would not be entitled to participate in the revenue from the tax. To adopt the appellee's construction of the exempting clause would involve the unjust condition, under the 1929 law, of the Arkansas citizens being required to pay the tax when there was no tax imposed by the adjoining state and yet being denied any share in the revenues simply because the sister state did not impose a tax. It goes without saying that no such inequitable result was intended by the legislature.

The language of the 1929 law was again used in Act 416 of 1941, with the same direction that the local schools should not participate in the revenue when there was no tax imposed across the line. By Act 109 of 1947 the legislature directed that the revenues from this tax be paid into the General Revenue Fund instead of the Common School Fund. Inasmuch as there was no longer any need for the special provision depriving the local schools of a share in the benefits of the tax, that clause of the prior law was not re-enacted.

Thus it is plain enough that in 1929 and again in 1941 the General Assembly meant for the exemption to apply to the situation now before us, in which no tax is imposed by the adjoining state. There is no reason to think that the legislature had a different intention when it repeated the identical language in Act 249 of 1951.

Second, the appellee's brief is primarily devoted to the practical argument that if retail outlets in Arkansas are permitted to sell unstamped cigarettes it will be next

to impossible to enforce the law against the importation of untaxed cigarettes, since the legal unstamped packages and the contraband ones will be indistinguishable. A complete answer to these fears is to be found in the statute itself, which enables the Commissioner of Revenues to anticipate the suggested condition. The statute authorizes the Commissioner to "prescribe the kind of stamps to be used in the administration of this act." Ark. Stats., § 84-2314. It also permits him "to make such rules and regulations as he deems requisite and advisable for the administration of this act." Section 84-2325. There is thus ample authority for the Commissioner to prescribe an identifying stamp for cigarettes lawfully exempt from the tax.

Reversed, a declaratory judgment to be entered here.

McFADDIN, J., dissents.