Ark. Association of County Judges *v.* Green.

5-2145                                    338 S. W. 2d 672

Opinion delivered September 19, 1960.

[Rehearing denied October 24, 1960]

A. *James Linder* and *William S. Arnold,* for appellant.

*Reed Williamson, Roy Canaday, Charles R. Garner,* for appellees.

PAUL WARD, Associate Justice. This is a class action brought in the Chancery Court by citizens and taxpayers of Ashley County to enjoin the County Judge of said county from paying dues (and making other contributions) to the Arkansas Association of County Judges, and asking for a refund of such payments theretofore made. The trial court granted the injunctive relief and rendered judgment for the previous payments, but refused authorization of execution against the association. The association now prosecutes this appeal.

The pertinent facts are not in dispute.

The defendants in the class action, filed January 29, 1957, were: W. T. Higginbotham, County Judge of Ashley County (hereafter referred to as Judge); The Arkansas Association of County Judges (a non-profit corporation hereafter referred to as Association), and; Arthur Carter, Secretary of the Association (hereafter referred to as Secretary).

The complaint contains, in substance, the following essential allegations: (a) The Association is a non-profit corporation organized February 10, 1948; (b) On January 29, 1957, the Secretary (both individually and acting for the Association) conspired with the Judge to fraudulently, willfully and maliciously deprive the taxpayers of Ashley County of county funds in that he presented a claim in the amount of $50, on behalf of the Association, for "Magazine Legislative Work"; (c) All said mentioned parties knew the claim was false, fraudulent and illegal, and that it constituted a fraud on the taxpayers of Ashley County; (d) The Judge (individually and as County Judge), knowing the claim to be false, approved the same and directed the issuance of a warrant in payment thereof; (e) As a direct and approximate result of the aforementioned transaction the

Secretary, while acting on behalf of himself and the Association, unlawfully accepted and collected Warrant No. 101 in the amount of $50 from the Ashley County Clerk and thereafter presented said warrant to the County Treasurer, who paid the same contrary to law on January 31, 1957; (f) All the defendants knew at the time that the said $50 were to be used for them in the interest of said Association and were not to be used for any authorized or legitimate county purpose nor in payment of any goods furnished or service rendered to Ashley County; (g) *The defendants will continue to conspire and to present illegal, false, and fraudulent claims* in behalf of themselves and said Association, to Ashley County and *the Judge will continue to allow said illegal claims unless enjoined by order of the court,* and, therefore, plaintiff's remedy at law is inadequate, and; (h) Plaintiffs believe and allege that the defendants, acting together, have allowed and paid other false, fraudulent and illegal claims of the Secretary and the Association, and all of said defendants should be ordered to account to these plaintiffs for the use and benefit of themselves and all other citizens, residents and taxpayers of Ashley County for all money previously received by the Secretary and the Association. The prayer of the plaintiffs was that this court *enjoin the defendants from presenting, allowing, paying and accepting payment for any and all such false, fraudulent and illegal claims; that they be ordered and directed to account to these plaintiffs for all similar funds heretofore received;* that judgment be entered against the defendants in the amount of $50 plus any other such false and illegal claims, and; for such equitable and proper relief to which the plaintiffs may be entitled. (Emphasis supplied.)

Appellants filed a demurrer to the above complaint on the ground that the Chancery Court had no jurisdiction. Upon the demurrer having been overruled appellants filed an answer in which they admitted presenting the said claim for $50 and also admitted the payment of said sum and receipt thereof. All other allegations in the complaint were specifically denied. The answer fur-

ther stated that the Judge, in allowing said claim, acted in his judicial capacity and his action thereon is not subject to review by the Chancery Court. Thereafter, and before the decree was rendered, the defendants filed an Objection to Judgment under the provision of Ark. Stats. § 27-615.

On a hearing before the Chancellor it was shown that, in addition to the $50 item mentioned above other payments of a like nature, some of which were barred by the statutes of limitation, were also made to the Association. It appears that these payments were made for dues to the Association, for advertisement in the association's magazine, and for "legislative work".

For convenience and clarity the points relied on by appellants for reversal will be discussed under the following classification and in the order named: (a) The Chancery Court had no jurisdiction; (b) The Objection to Judgment should have been sustained, and; (c) The claims were legal and should have been allowed.

(a) *Jurisdiction.* It is here argued that the County Court, in passing on a claim presented to it, acts in a judicial capacity, citing *Hutson* v. *States,* 171 Ark. 1132, 287 S. W. 398, *Farmer* v. *Franklin County,* 179 Ark. 373, 16 S. W. 2d 10, and *Logan County* v. *Anderson,* 202 Ark. 244, 150 S. W. 2d 197. It was pointed out that, under Article 7, Section 51 of the Arkansas Constitution and Arkansas Statutes, § 27-2001, the proper remedy is to appeal to the Circuit Court, citing the *Anderson* case *supra; Ladd* v. *Stubblefield,* 195 Ark. 261, 111 S. W. 2d 555, and; *Monroe County* v. *Brown,* 118 Ark. 524, 117 S. W. 40. Appellants however concede some exceptions to the above rule particularly when an *illegal exaction* is involved and where the judgment of the County Court is procured through *fraud,* asserting that in this case there is no *illegal exaction,* or *illegal tax* involved and also that no fraud has been shown.

We must agree with appellants that there is nothing in the record to justify a finding that appellants acted with any fraudulent intent. On the other hand, the rec-

ord reveals that they acted in accordance with legal advice and in accordance with the custom or usage followed in other counties. In other words, we find nothing to show that appellants were not acting in good faith for what they considered to be to the best interest of Ashley County. In our opinion, however, the complaint is based upon the theory of an *illegal exaction,* and that it is not necessary that an *illegal tax* be involved. In the case of *Lee County* v. *Robertson,* 66 Ark. 82, 48 S. W. 901, the court was dealing not with an illegal tax but with a question of an illegal use or appropriation of county funds. At page 87 of the Arkansas Reports, this statement was made: "The order of reappropriation was tantamount to an allowance and enforcement of an *illegal exaction* against every taxpayer of the county. Each taxpayer was therefore individually interested in such order." Article 16, Section 13, of the Arkansas Constitution provides that: "Any citizen of any county, city or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any *illegal exactions* whatever." (Emphasis supplied.) This court has many times construed the above constitutional provision but has never limited its application to an *illegal tax* but has uniformly construed it to apply to an *illegal exaction* as heretofore defined. In the case of *Ward* v. *Farrell,* 221 Ark. 363, 253 S. W. 2d 353, under facts somewhat analogous in principle to the facts of this case, in referring to the above mentioned constitutional provision, the court quoted with approval the following:

"This court has construed that provision to mean that a misapplication by a public official of funds arising from taxation constitutes an exaction from the taxpayers and empowers any citizen to maintain a suit to prevent such a misapplication of funds."

"There is eminent authority for holding, even in the absence of an express provision of the Constitution, such as referred to above, that a remedy is afforded in equity to taxpayers to prevent misapplication of public funds on the theory that the taxpayers are the equitable owners

of public funds and that their liability to replenish the funds exhausted by the misapplication entitle them to relief against such misapplication."

Appellants' contention that since appellees had a right to appeal to the Circuit Court which provided them an adequate remedy at law, the Chancery Court has no jurisdiction can not be sustained. Such an argument was presented and rejected in the *Farrell* case, *supra*. Equity jurisdiction may also be invoked to avoid a multiplicity of suits which would otherwise result. In the case under consideration it is not denied that several payments of the nature here complained of have been made over a period of years not only in Ashley County but in other counties, and the complaint alleges that many more such efforts will be attempted in the future.

Thus it is seen that *jurisdiction* in this case, as it relates to injunctive relief, may be open to doubt, but we do not believe it is necessary to resolve that exact issue here. The question of whether the several counties can expend public funds to support the Association is the prime issue. It is a matter that affects the general public and one that should be resolved for future guidance of all concerned. Therefore we feel justified in treating appellees' petition (insofar as it relates to injunctive relief) as one for a declaratory judgment. We did this, and for much the same reason, in the case of *Culp* v. *Scurlock, Commr. of Revenues,* 225 Ark. 749, 284 S. W. 2d 851. It was there said:

"It is suggested by the appellee's pleadings and brief that the issuance of a writ of mandamus would not terminate the dispute, since the form of retail permit used by the revenue department merely authorizes the holder to sell cigarettes, without reference to the matter of taxation. Even so, the complaint may equally well be treated as one for a declaratory judgment — a remedy peculiarly appropriate to controversies between private citizens and public officials about the meaning of statutes." (Citing authorities)

It was there also said:

"Since the effect of a declaratory judgment in this case will be to terminate an actual controversy in a matter of public interest, it is manifestly desirable that the case be decided on its merits."

We will proceed, therefore, to examine the other points relied on by appellants.

(b) *Objection to Judgment.* It is pointed out by appellants that this action was brought in Ashley County against the County Judge, who of course was a resident of that county, but that the other defendants were non-residents of the county. It is also stated that no judgment was rendered against Judge Higginbotham. Appellants' Objection to Judgment was filed under Ark. Stats. § 27-615, which provides, generally, that there can be no judgment rendered against non-resident defendants if none is rendered against the resident defendant. We cannot sustain this contention. The statute referred to above states that "the person should not be entitled to judgment against any of them (defendants) on the *service of summons* in another county court . . ." (Emphasis supplied.) In the case under consideration the "other" defendants were not served with a summons but voluntarily came into court and filed a demurrer, an answer and a motion. Under these circumstances the appellants are not entitled to the protection of the statute. In the case of *Federal Land Bank of St. Louis* v. *Gladish,* 176 Ark. 267, 2 S. W. 2d 696, the court said:

"A court acquires jurisdiction over the person of a plaintiff whenever the plaintiff appears and invokes the power or action of the court in any manner, and when the defendant voluntarily appears in any case and, without objection, proceeds, the court thereby acquires jurisdiction over his person, whether any summons was issued or served or not."

It is well established by the decisions of this court that although the parties to a suit cannot by agreement confer jurisdiction of the subject matter upon the court,

they can by agreement waive improper venue. In the case of *Arkansas State Racing Commission* v. *Southland Racing Corporation,* 226 Ark. 995, 295 S. W. 2d 617, this court recognized "the settled rule that an objection to venue is waived by a defendant who enters his appearance by the filing of a demurrer . . ." Again the court in that case said: "The statute providing that suits against State officers and boards must be brought in Pulaski county relates only to venue, not jurisdiction, and falls within the general rule that the issue of improper venue may be waived."

(c) *Was the Claim Legal.* The important question involved in this litigation concerns the legality of the claims filed by the Association for payment by Ashley County. Appellant makes the assertion that said claims were valid but cites no authorities and makes no extended argument to support that assertion. In this connection appellant relies principally on the proposition that Ashley County has received substantial benefits from the activities of the Association and that, therefore, said claims should be sustained upon a *quantum meruit* basis. This argument could apply only to payments already made but has no application to future claims of like nature. It is noted here (and will be referred to later) that appellees' complaint covers two separate and distinct matters. One, it seeks to recover payments already made; and, two, that other claims will be filed and paid which should be enjoined.

Our own research, assisted by the briefs, reveals no constitutional or other legal ground for sustaining claims of the nature here involved.

In the case of *Allen* v. *Barnett,* 186 Ark. 494, 54 S. W. 2d 399, this court said:

"The county court is a creature of the Constitution, and it is not to be doubted that it has only such power as is expressly granted by the Constitution and statutes in aid thereof, or which are necessarily implied from the authority conferred."

Here it is not contended that the Constitution or any statute gives the county court specific authority to pay dues to the Association. The only question then is: Is such authority implied? We think the answer must be in the negative. Former decisions of this court support this view. In *Pressley* v. *Deal, County Judge,* 192 Ark. 217, 90 S. W. 2d 757, the quorum court of Cleburne County appropriated $300 to pay the county judge's expenses. The claim was filed and allowed by the county judge. A citizen and taxpayer intervened and appealed to the Circuit Court where it was also allowed. On appeal this court reversed the County Court on the ground that there was no statute authorizing such claim. Likewise in *Johnson* v. *Donham,* 191 Ark. 192, 84 S. W. 2d 374, we held that there was no authority in the law for the county court to purchase a law library for the use of the prosecuting attorney.

In the *Pressley* case, *supra,* this court, in construing subdivision No. 7 of Section 1982 of Crawford & Moses' Digest (the same as Ark. Stats. § 17-409), said: ''It will be noticed that the other expenses mentioned for which an appropriation may be made must be such 'as are allowed by the laws of this State.' '' The legislature has passed numerous statutes giving counties the authority to expend money for a variety of purposes, such as: To purchase a flag pole (Ark. Stats. § 17-501); to publish reports of county officers (Ark. Stats. § 23-408); for a county planning board (Ark. Stats. § 17-1101); to pay county defense attorneys (Ark. Stats. § 43-2415) and to pay Municipal Court expenses (Ark. Stats. § 22-720). In none of these and many other instances was it considered that the expenditures were ''necessarily implied.'' In like manner we are unwilling to say now that the expense of financing a County Judges Association is a necessarily implied obligation of the counties — in this instance, of Ashley County. It is easy to see how it could lead to extreme abuse of the use of county funds to hold otherwise.

We agree with appellant that the Chancery Court had no jurisdiction to order repayment of claims already

allowed. In the absence of fraud (and we think no fraud was shown here) the remedy was by appeal to the Circuit Court. See: Art. 7 § 33 Constitution, Ark. Stats. § 27-2001, and *Jones* v. *Capers,* 231 Ark. 870, 333 S. W. 2d 242.

Since, as before stated, we treat the petition as one for a declaratory judgment, and in view of what we have already said, it was not appropriate for the Chancellor to enjoin the Association from filing claims and the Judge from allowing the same. These are matters involving judicial procedure and should be decided on the peculiar facts of each case. The trial court did have authority to enter a declaratory decree, and it should have done so, in accordance with this opinion, thereby setting at rest the present controversy. Therefore the case is remanded for the entry of such a declaratory decree.

Modified and remanded with directions.

JOHNSON, J., not participating.

HARRIS, C. J., and MCFADDIN, J., dissent.

CARLETON HARRIS, Chief Justice, dissenting.

In my opinion, the decree of the Chancery Court should be reversed.

We have repeatedly held that a county court, in allowing claims against the county, acts judicially, and its judgments are not open for collateral attack except for fraud or lack of jurisdiction. See *Monroe County* v. *Brown,* 118 Ark. 524, 117 S. W. 40. Certainly, the county court had jurisdiction. As stated in *Ladd* v. *Stubblefield,* 195 Ark. 261, 111 S. W. 2d 555:

"The county court, and that court only, has the power to allow claims against the various funds involved in this controversy."

The court very clearly held in that opinion that the county court had jurisdiction of the subject matter, *i.e.,* allowing claims.

Nor is there any finding by the Majority in this case that the claim was fraudulent. In fact, the Majority state:

"We must agree with appellants that there is nothing in the record to justify a finding that appellants acted with any fraudulent intent."

Further, from the majority opinion:

"We find nothing to show that appellants were not acting in good faith for what they considered to be to the best interests of Ashley County."

Therefore, in accordance with the language cited in *Monroe County* v. *Brown, supra,* since the county judge acted judicially in approving the claim here in question, and this Court has said there was no fraud, the judgment (allowance of claim) was not open to collateral attack. Rather, the correct remedy, by any taxpayer feeling aggrieved at the allowance of such claim, was by appeal to the Circuit Court. This is the remedy provided by our Constitution. Section 51, Article 7 of the Constitution of the State of Arkansas provides:

"In all cases of allowances made for or against counties, cities or towns, an appeal shall lie to the circuit court of the county, at the instance of the party aggrieved, or on the intervention of any citizen or resident and taxpayer of such county, city or town, on the same terms and conditions on which appeals may be granted to the circuit court in other cases; and the matter pertaining to any such allowance shall be tried in the circuit court *de novo.*"

In view of the citations herein set out, I am strongly of the opinion that the Chancery Court was without jurisdiction to hear this cause. This is the first point raised by appellants, and since I consider this argument well founded, a discussion of the merits of the cause is unnecessary. In my view, the Chancery Court was without power to issue an injunction in this case, and I deem it appropriate to add that the very fact that this Court has seen fit to change the nature of the proceeding, treating it as a petition for declaratory judgment, is evidence enough that appellees pursued an improper remedy.

ED. F. McFADDIN, Associate Justice, dissenting.

My dissent is along the same line as that taken by Chief Justice Harris.

1. I am of the opinion that equity jurisdiction cannot be invoked by appellees since they should have resisted the claim in the County Court and appealed to the Circuit Court from any decision adverse to their views.

2. Furthermore, I am of the opinion that this Court should not "reform" the present case to treat it as a declaratory judgment proceeding. Sometimes it is permissible to so "reform" cases, but this is not such a case.

3. Finally, I do not understand the majority opinion as saying that a claim such as this $50 item can *never* be allowed if the Legislature should pass a law (like Act 331 of 1935 or Act 44 of 1927), authorizing County Courts to pay such a claim as the $50 item here involved. I make this observation because I am reasonably confident that the Legislature will pass such an act when its attention has been called to the holding of the majority in this case.