## KEMP-BRADFORD VFW POST 4764 et al
### *v.* David WOOD et al

77-88                                    554 S.W. 2d 344

Opinion delivered July 18, 1977
(In Banc)
[Rehearing denied September 19, 1977.]

*Rose, Nash, Williamson, Carroll, Clay & Giroir, P.A.*, and *John W. Bailey*, for appellants.

*Thomas A. Martin Jr.*, for appellees.

*Pollard & Cavaneau, Jake Brick*, and *R. E. "Skip" Wallin*, for amicus curiae, Searcy Country Club, Inc.

MAURICE MITCHELL, Special Justice. David Wood and others filed a petition in the Circuit Court of Pulaski County against Karen Jones, Administrator of the Alcoholic Beverage Control Division of the State of Arkansas, and members of the Alcoholic Beverage Control Board, praying that mandamus be issued against the respondents ordering them to withdraw and void all licenses and permits of any sort issued to private clubs pursuant to Act 132 of 1969. Among other things, Act 132 authorized the Alcoholic Beverage Control Board to issue permits to private clubs as defined in the Act.

The respondents moved to dismiss the petition. Appellants, Kemp-Bradford VFW Post 4764, and other private clubs licensed under Act 132 of 1969 were granted leave to intervene. The Intervenors also moved to dismiss the petition.

The facts involved in this case are contained in a brief stipulation between the parties:

The Alcoholic Beverage Control Board and its officers were the proper officers to issue permits under Section 10 of Act 132 of 1969; they have issued and are issuing permits pursuant to that Section to private clubs in both "wet" and

"dry" counties. Act 1 of 1942 was an Initiated Act. Act 132 of 1969 received 19 votes in the Senate and 74 votes in the House.

The parties also stipulated that the sole substantive legal issue raised in this case was the validity of permits issued to private clubs in counties which are "dry" under Initiated Act 1 of 1942.

Amendment 7, Section 8 of the Arkansas Constitution requires a two-thirds vote of members of each House of the Legislature to amend an initiated measure. It was stipulated that Act 132 of 1969 did not receive the required legislative vote to amend an initiated measure. The learned judge of the lower court opined that Act 132 of 1969 violates our Constitution in that it would amend Initiated Act 1 of 1942 by granting authority to issue permits for the dispensing of alcoholic beverages to private clubs in "dry" territories. No authority for the issuance of such permits exists under the initiated measure.

The circuit court issued a writ of mandamus ordering the Alcoholic Beverage Control Board and the Administrator of the Alcoholic Beverage Control Division to immediately rescind and void all permits previously issued by them for the dispensing of alcoholic beverages in "dry" subdivisions. As stated in the writ of mandamus, it was based on the premise that "mandamus is the proper remedy for the subject matter of this suit and is the only adequate remedy available to the petitioners." This premise was reiterated by the lower court in its amended opinion when it stated that "[T]he allegations of the petition in this case support relief against the perfor- mance of allegedly illegal acts and mandamus is the proper procedure."

In our opinion, mandamus was not the proper procedure on two grounds. Other adequate remedies were available to the appellees; and the appellees are attempting to enforce an alleged duty which is not a plain ministerial duty for which a writ of mandamus may issue.

In considering the issuance of any writ of mandamus, a court should bear in mind the extraordinary nature of this

remedy. Mandamus "is a summary, expeditious, and drastic writ, of an extraordinary character, sometimes referred to as the highest judicial writ known to the law, and the law has properly erected many safeguards around it to prevent its issuance in cases where irreparable injury and injustice might result." 52 Am. Jur. 2d, Mandamus, § 4.

In regard to our first ground for denial of mandamus, it is well settled that mandamus is not allowable where there is any other adequate remedy. In *Rolfe* v. *Spybuck Drainage Dist. No. 1,* 101 Ark. 29, 31, 140 S.W. 988, 989 (1911), this Court stated: "As a general rule, the party applying for a writ of mandamus must show a specific legal right to its issuance, and also the absence of any other legal remedy."

Appellants argue forcefully that other, less drastic, procedures are available to obtain any remedy to which the appellees may be entitled. We agree. While several other appropriate procedures are available for the appellees to pursue, one of the most obvious is a proceeding for a declaratory judgment. Ark. Stat. Ann. § 34-2502 (Repl. 1962) states: "Any person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder." The central question which the appellees attempt to raise in this case is whether Act 132 of 1969 is valid under the Arkansas Constitution. An action for a declaratory judgment would provide the answer to this question, as evidenced by the plain language of the statute creating that procedure.

The wisdom of the rule that mandamus will not lie when any other remedy is available becomes clear when other remedies available to the appellees in the case at bar are considered. Under other procedures available for questioning the constitutionality of Act 132 of 1969, different pleadings, evidence, parties and arguments would have been possible and, in our opinion, highly probable. We believe these differences would make for a closer and fairer examination of the questioned Act and the duties, rights and privileges of the public officials and other persons which it affects.

The denial of mandamus on the ground that the appellees are attempting to enforce an alleged duty which is not a plain ministerial duty presents a closer question. While it may be argued, and some courts have ruled under particular circumstances, that a question as to the constitutionality of a statute may be raised in a mandamus proceeding, we do not believe that this argument should prevail under the circumstances existing in the case at bar. For almost eight years, the appellant Board, an agency of the executive branch of the State of Arkansas, has been issuing permits to private clubs under Act 132 of 1969. Because this Act is presumed to be constitutional until it is overturned by proper judicial authority, the appellant Board had the legal authority and duty to issue permits when statutory and regulatory requirements were met by an applicant, and the holders of these permits had the legal right to exercise the privileges properly granted to them pursuant to the Act.

Under the circumstances in the case at bar, the sounder argument as to whether the constitutionality of a statute may be questioned in a mandamus proceeding is stated in 52 Am. Jur. 2d, Mandamus, § 95:

> The view has been taken in some cases that since mandamus lies only to enforce a plain ministerial duty, and that since a plain ministerial duty cannot exist which is made to appear only by declaring a statute unconstitutional, the writ will not issue if it is necessary in order to fix upon the respondent the duty sought to be enforced to declare a statute in conflict with such alleged duty unconstitutional. A further reason given is that ministerial officers should not be required, under the penalty of being subjected to a mandate, to pass upon the constitutionality of a statute apparently governing their actions.

This argument is bolstered by language contained in Annot. 129 A.L.R. 941 (1940), which states:

> Some courts have emphasized the doctrine that a statute is presumed to be constitutional until the contrary is plainly made to appear. And as the courts are the

properly constituted tribunals to decide the question, and as they exercise great caution before declaring an enactment unconstitutional, they have unqualifiedly applied the general rule that nothing will justify a mere ministerial officer, who has no judicial power, in assuming that a statute is unconstitutional and acting accordingly.

The argument that we have adopted on this point is driven home by the fact that, from the record before us, the other justices of this Court do not agree as to the constitutionality of Act 132 of 1969. We cannot see how we could rule that mandamus should issue to enforce a plain ministerial duty when that duty remains unclear to this Court.

While we believe that an early determination of the substantive legal question which the appellees attempt to present is a desirable end, we cannot agree with the suggested means to reach it, whereby this Court would perform a transformation of this proceeding. What all the parties have treated and argued as an action for mandamus would be changed into a suit for declaratory judgment. The judge who heard this case below, in his amended opinion, ruled: "The subject case is not a suit for declaratory judgment and the provisions regarding the Attorney General are not applicable." The appellees, in both their brief and their oral argument, readily admitted that remedies other than mandamus were available to them. They stated in oral argument that they chose mandamus because they believed it to be a short-cut. A change by this Court in the choice made by the appellees, in our opinion, requires a rewriting of the record before us.

In regard to the argument for treating this proceeding as a declaratory judgment action, the case at bar has several features which distinguish it from the case of *Culp* v. *Scurlock*, 225 Ark. 749, 248 S.W. 2d 851 (1955). There the question was the proper interpretation of an exemption in the cigarette tax statutes as to parties to the proceeding. Here the question which the appellees try to raise is whether all permits issued to private clubs in "dry" counties pursuant to a statute are void on constitutional grounds regardless of whether the

holders of the permits are parties to the proceeding.

It is also suggested that this proceeding has become a class action. No legal authority has been cited in support of this position.

We can find no proof in the record of this case which would support a finding that:

a.   the intervenors and friends of this Court represented a class which included, as members, the holders of all private club permits in "dry" counties,

b.   any parties are adequately representative of any class, or

c.   any form of notice, whether reasonable or not, has been given to the members of any class, advising them that a *res adjudicata* determination would be made of their rights.

This absence of proof as to basic class action requirements leaves the position that this proceeding has become a class action unsupported by evidence.

We do not believe the rights of the members of any class, whether alcoholic beverages are involved or not, should ever be determined without reasonable notice or without evidence that parties are adequately representative of the class. This statement is in harmony with both our concept of due process of law and the restrictive view taken by this Court toward class actions in the case of *Ross* v. *Ark. Communities et al,* 258 Ark. 925, 529 S.W. 2d 876 (1975).

The appellees cite three statutes as authority for their right to maintain a mandamus action in the Pulaski County Circuit Court. One of these statutes, Ark. Stat. Ann. § 27-603 (1962 Repl.), places venue in Pulaski County for actions brought against State boards.

Another of these statutes is Ark. Stat. Ann. § 33-102 (1962 Repl.) which defines a writ of mandamus. We can find

no language in this statute which would remove either of the grounds upon which we base our opinion that mandamus is not a proper procedure in the instant case. These two grounds are part of the safeguards which have been erected around this procedure to limit its use to circumstances which require a remedy of its extraordinary character.

The appellees also cite Ark. Stat. Ann. § 48-805 (1964 Repl.) which bears the title of "Mandamus of county officials." A reading of Initiated Act 1 of 1942 clearly indicates that this section is intended to apply to matters relating to local option elections, such as the petition for an election, its conduct, and the certification of its results, and not to a mandamus proceeding seeking to void and rescind permits granted to private clubs under Act 132 of 1969.

This opinion is written on behalf of a plurality of the justices who heard this case. BYRD, J., HICKMAN, J. and the writer would reverse and dismiss because we are of the opinion that appellees have not presented a case in which a writ of mandamus should be issued.

FOGLEMAN, J. would reverse and dismiss this case on its merits. He would not rule Act 132 of 1969 unconstitutional.

The decision of this Court is that this case is reversed and dismissed.

HARRIS, C.J., and GEORGE ROSE SMITH and ROY, JJ., dissent.

HOLT, J., disqualified and not participating.

JOHN A. FOGLEMAN, Justice, concurring. I wholeheartedly agree with Mr. Justice Smith that the issue in this case should be decided. Although it is true that the respondents in this case pleaded that mandamus was not the proper remedy, they have abandoned that position and are as anxious for the real issue to be decided as the petitioner is. In spite of this, the plurality has permitted intervenors and amici curiae to dominate and assume control of the litigation. The reasons for the Alcohol Control Board and its Director wanting a

resolution of the question, without being put into a whole new squirrel cage of litigation are both obvious and appropriate. The reasons for intervenors wanting to avoid the real issue by leading the petitioner through a jungle of barbed wire procedural entanglements may be as obvious, but not as appropriate. It is as if they seek to postpone the evil day of an inevitably unfavorable conclusion. More time, effort and argument have been directed toward the propriety of the remedy than to the real issue raised by the petitioners for mandamus. This case is a classic example of the reason that intervenors and amici curiae should not be permitted to control litigation into which they inject themselves, however properly. See *Giles v. State,* 261 Ark. 413, 549 S.W. 2d 479; *Grayson v. Arrington,* 225 Ark. 922, 286 S.W. 2d 501; *Weber v. Pryor, Governor,* 259 Ark. 153, 531 S.W. 2d 708. The interest of a citizen and taxpayer in having the laws enforced and public duties performed is sufficient basis for application for the writ. 52 Am. Jur. 2d 713, Mandamus § 390. See *Beene v. Hutto,* 192 Ark. 848, 96 S.W. 2d 485; *Buchanan v. Halpin,* 176 Ark. 822, 4 S.W. 2d 510; *Moses v. Kearney,* 31 Ark. 261.

I do not agree that mandamus was not the proper remedy. It is designed to permit the citizen to force a public officer to perform his duty. See *State v. Nelson,* 246 Ark. 210, 438 S.W. 2d 33. The writ is an order of the circuit court commanding an executive, judicial or ministerial officer to perform an act, or omit to do an act, the performance or omission of which is enjoined by law. Ark. Stat. Ann. § 33-102 (Repl. 1962). It is a plain, simple, direct and adequate remedy, when the validity of a statute is the only question involved. The requirement that a petitioner have no adequate remedy at law before he is entitled to mandamus does not mean that there must be absolutely no way in which he can come up with another remedy. An adequate remedy at law, sufficient to preclude mandamus, is a remedy which is plain and complete, as practical and efficient to the ends of justice and the proper administration thereof as the remedy invoked. *Ghent v. State,* 189 Ark. 747, 75 S.W. 2d 67. There we said that the adequate remedy contemplated by the law must be one which *itself enforces* in some way the performance of the particular duty and not merely a remedy which in the end saves

the party to whom the duty is owed unharmed by its nonper-formance.

Obviously, had appellees pursued the matter by seeking a declaratory judgment, they would have been confronted by many questions. The first would probably have been that no litigation was threatened. See *Jessup* v. *Carmichael,* 224 Ark. 230, 272 S.W. 2d 438. The next question raised would have been compliance with Ark. Stat. Ann. § 34-2510 (Repl. 1962). That section requires that all persons be made parties who claim any interest which would be affected by the declaration and the declaration would not prejudice the rights of persons not parties to the proceeding. *McFarlin* v. *Kelly,* 246 Ark. 1237, 442 S.W. 2d 183; *Block* v. *Allen,* 241 Ark. 970, 411 S.W. 2d 21. The flood of interventions and the abundance of amici curiae clearly show that this remedy would not have been plain or practical. And then, a declaratory judgment is not self-executing. After obtaining a favorable judgment, the appellees would have been required to apply to the court for the relief they sought by mandamus and then any adverse party would be permitted, after reasonable notice, to show cause why this relief should not be granted. Ark. Stat. Ann. § 34-2507 (Repl. 1962). This is not the plain, complete, practical and efficient remedy contemplated as a bar to mandamus.

The alternate remedy must be well adapted to remedy the wrong complained of and if it is inconvenient or incomplete the court exercises a sound discretion in granting or refusing the writ. If resort to further action might be necessary to enforcement of the right after pursuing the other remedy, the court may properly issue the writ. *Huie* v. *Barkman,* 179 Ark. 772, 18 S.W. 2d 334. There was no abuse of the trial court's discretion in determining that mandamus was the proper remedy. We should not hold that it was an abuse of discretion. In my view, it is an abuse of discretion to hold that he erred in this respect.

I particularly deplore the plurality's taking the stance that constitutional questions are not to be decided in a mandamus proceeding. There is ample authority to the contrary. See 52 Am. Jur. 2d 418, Mandamus 95. The position taken on this

point by the plurality of this court is definitely a minority view. The difficulty of the legal questions presented is not an excuse for the denial of relief on the ground that there is no clear legal right to the remedy. 55 CJS 93, Mandamus, § 53. The fact that there is a disputed question of law and the construction of a statute involved does not make mandamus unavailable. 55 CJS 95, Mandamus § 53. What is even more important is the public interest involved, as is always the case when any element of the alcohol problem is treated. The public interest demands that the question be settled one way or the other. The public interest may be the actuating reason for granting the writ, even though the petitioner may not have a clear legal right thereto. 52 Am. Jur. 2d 360, Mandamus § 35. If public policy demands an early determination of the issues involved, the court may grant the writ if the circumstances warrant, notwithstanding the existence of another remedy. 52 Am. Jur. 2d 372, 375, Mandamus §§ 46, 49.

I have quite a different view from that of my brother Smith as to what is nonsense and what isn't. In my view, the two acts in question are not in irreconcilable conflict and Act 132 of 1969 should be held valid.

In approaching the question, we must start with the strong presumption that the legislative act is valid. *State* v. *Moore,* 76 Ark. 197, 88 S.W. 881, 70 LRA 671; *Stone* v. *State,* 254 Ark. 1011, 498 S.W. 2d 634. All doubts must be resolved in favor of constitutionality and the courts must construe an act so it will meet the test of constitutionality if it is possible to do so. *Stone* v. *State,* supra. Then we must not ignore the expressed intent of the legislature but must give effect to its language if reasonably possible to do so. 82 CJS 583, Statutes, § 322; 73 Am. Jur. 2d 362, Statutes, § 158. See *State* v. *Kansas City & Memphis Ry. & Bridge Co.,* 117 Ark. 606, 174 S.W. 248; *City of Ft. Smith* v. *Gunter,* 106 Ark. 371, 154 S.W. 181. In § 1, the General Assembly reaffirmed the public policy of the state that the qualified electors of any political subdivision have the right of local option to prohibit the sale or manufacture of intoxicating liquor therein pursuant to Initiated Act 1 of 1942. In § 20, it stated the legislative intent thus:

\* \* \* Nothing in this Act shall be construed to authorize the sale of alcoholic liquors or beer, or to allow the issuance of any permit therefor, in any ward or portion of a city, or in any county, or portion thereof, in which the sale of alcoholic liquors or beer is prohibited pursuant to local option election held under the Initiated Act, nor shall anything in this Act be deemed to amend or repeal any of the provisions of said Initiated Act.

I agree that if there is an irreconcilable conflict between Act 132 and Initiated Act 1 of 1942, that the legislature could not either repeal or amend the Initiated Act on the vote recorded on the later act. But we should not declare the express declaration of the legislative intent to be nonsense, if it is possible to construe the act in accordance with that intent.

If I could find any definition of the acts prohibited in dry territory by Initiated Act 1, contrary to Act 132, I would agree that Act 132 was invalid insofar as dry territory is concerned. Initiated Act No. 1 makes it unlawful to manufacture, sell, barter, loan or give away intoxicating liquor in any county, township, municipality, ward or precinct in which the manufacture or sale is prohibited by a local option election. At such elections the voters voted for or against the manufacture or sale of intoxicating liquors, not "wet or dry." The prohibited acts are not further defined. In Act 132, the General Assembly said:

Section 10. (a) The General Assembly recognizes that many individuals in this State serve mixed drinks containing alcoholic beverages to their friends and guests in the privacy of their homes and, in addition, many individuals associated together in private non-profit associations and/or corporations established for fraternal, patriotic, recreational, political, social or other mutual purposes as authorized by law, established not for pecuniary gain, have, for their mutual convenience, provided for the preparation and serving to themselves and their guests of mixed drinks prepared from alcoholic beverages owned by such members individually or in common under a so-called 'locker,' 'pool,' or 'revolving fund' system. In order to clarify the

alcoholic beverage control laws of this State, and to regulate and prohibit the sale of alcoholic beverages in violation of the provisions of this Act and other applicable alcoholic beverage control laws of this State, the General Assembly hereby determines that the preparation, mixing and serving of such mixed drinks, beer and wine for consumption only on the premises of a private club as defined in Section 2 ( j) hereof by the members thereof and their guests, and the making of a charge for such services, shall not be deemed to be a sale or be in violation of any law of this State prohibiting the manufacture, sale, barter, loan or giving away of intoxicating liquor whenever:

(1) The alcoholic beverages, beer and wine so consumed have been furnished or drawn from private stocks thereof belonging to such members, individually or in common under a so-called 'locker,' 'pool,' or 'revolving fund' system, and are replenished only at the expense of such members;

(2) Such private club has acquired a permit from the Board, in such form as the Board may appropriately determine. No private club permitted hereunder shall sell alcoholic beverages either by the package or drink. Alcoholic beverages, beer and wine owned by members may be stored on the premises of the club. If any permittee shall sell, barter, loan or give away any intoxicating liquor in violation of this Act or other alcoholic beverage control laws of this State, the permit of such club shall be revoked.

(c) The Alcoholic Beverage Control Board is hereby authorized and directed to establish rules and regulations with respect to permits issued under the provisions of this Section to assure compliance with the provisions hereof and to prohibit any permittee from engaging in the unlawful sale of alcoholic beverages.

I have searched for any definition of the acts prohibited by Initiated Act 1 other than the statement contained in the act itself. I have found none. I submit, therefore, that the later act did not amend Initiated Act 1 by changing any definition

of those terms.

I find that the legislature has taken a position very similar to that this court took many years ago in sustaining the conviction of one accused of selling intoxicating liquor without a license. The court, in rejecting an argument made by the accused, made a distinction that fully recognized the possibility of similar legal transactions which would not constitute a sale. In *Hunter* v. *State*, 60 Ark. 312, 30 S.W. 42, the court said:

> * * * It is said by appellant's counsel, in argument, that "any personal property may be purchased and held by the purchasers as tenants in common." But a tenancy in common is not created by several purchases of distinct and specific portions of common property, for it is said: "Tenants in common are generally defined to be such as hold the same land together by several and distinct titles, but by unity of possession, because none knows his own severalty, and therefore all occupy promiscuously." Black, Law Dict. The purchases in this case were not like the purchases made by the servant or employe of a club, or partnership, or other persons acting in a body as one person, for in such case each does not buy a specific quantity, but the body buys, and each member of the body has an interest, not in any particular part or portion of the whole, but in every drop and particle, — something after the manner of a tenancy in common. * * *

See also, *Fenix* v. *State*, 90 Ark. 589, 120 S.W. 338; *Whitmore* v. *State*, 72 Ark. 14, 77 S.W. 598.

In my opinion Act 132 of 1969 neither amended nor repealed Initiated Act No. 1 and the trial court erred in so holding. I must add that the ineffectiveness of enforcement of Act 132 is not a matter to which this court should address itself. That is a matter that should be called to the attention of the executive and legislative branches and to the Alcohol Control Board and its Director. The fact that a permit fee is paid is an inappropriate basis for holding the act invalid. The cost of regulation should be borne by the permittees and the

operation should be controlled. The imposition of a gross receipts tax on services rather than sales is not at all a novel approach in Arkansas. Ark. Stat. Ann. § 84-1903 (Repl. 1960 and Supp. 1975).

I would reverse the judgment and dismiss the proceeding.

CARLETON HARRIS, Chief Justice, dissenting. My reason for dissenting in this case can be expressed quickly and concisely.

Initiated Act No. 1, *inter alia,* provides:

"It shall be unlawful for any person, firm or corporation, to manufacture, sell, barter, loan or give away intoxicating liquor in any County, Township, Municipality, Ward or Precinct in which the manufacture or sale of intoxicating liquor is or shall be prohibited under the provisions of this Act."

It is my feeling that § 10, the private club provision of Act 132, is an attempted amendment of Initiated Act No. 1, and accordingly required a two-thirds vote of both houses of the General Assembly. This vote, of course, the measure did not receive.

Actually, I consider the provision of § 10 relative to the charge for a drink in a private club constituting a charge for services, rather than a sale of the alcoholic beverage, to be simply an attempt to evade the mandatory provisions of Initiated Act No. 1, quoted above.

Accordingly, I would affirm.

GEORGE ROSE SMITH, Justice, dissenting. My dissent goes primarily to the three-judge plurality opinion, which expresses the view that the case should be dismissed because an action for mandamus is not the proper remedy. I am firmly of the opinion that the principal issue should be faced and decided — not side-stepped, as the plurality opinion has done. In fact, four of the seven judges are reaching the merits

of the case.

The original parties to the case have asked us to decide what all the parties, including the intervenors, have stipulated to be the only substantive legal issue: the validity of private club permits. The plaintiffs brought the suit for the single purpose of having that question decided. The only defendant, the Director of the Alcoholic Beverage Control Board, appearing by counsel, closed his oral argument in this court by stating positively: "We ask that this case be decided on the merits; we want to know our position under the law."

Despite that bipartisan request, the plurality opinion avoids the issue by pointing out that a suit for a declaratory judgment would be a proper remedy. I agree, but our duty to treat a mandamus action as one for a declaratory judgment was established more than 20 years ago. *Culp* v. *Scurlock,* 225 Ark. 749, 284 S.W. 2d 851 (1955). There, as here, it was argued that mandamus is not the proper method of raising an important issue of public interest (in that instance, the meaning of a statute). Our answer was short and unmistakably clear:

It is suggested by the appellee's pleadings and brief that the issuance of a writ of mandamus would not terminate the dispute . . . Even so, the complaint may equally well be treated as one for a declaratory judgment — a remedy peculiarly appropriate to controversies between private citizens and public officials about the meaning of statutes. [Citing authorities.] This complaint states all the facts necessary to a petition for a declaratory judgment, and it is the statement of facts rather than the prayer for relief that makes up the cause of action. *Grytbak* v. *Grytbak,* 216 Ark. 674, 227 S.W. 2d 633. Since the effect of a declaratory judgment in this case will be to terminate an actual controversy in a matter of public interest, it is manifestly desirable that the case be decided on its merits.

We so decided it, our opinion ending with this directive: "Reversed, a declaratory judgment to be entered here."

Two main arguments have been made against the propriety of settling this litigation once and for all by a declaratory judgment. It is said, first, that all necessary parties may not be represented and, second, that the property rights of absent persons may be affected.

The two arguments go hand in hand and may be discussed as one. If a declaratory judgment suit had been brought to begin with, it would probably have been a class suit, for the number of private clubs and the membership in the unincorporated ones must run to thousands. Yet the case at bar has in substance *become* a class suit, for the intervenors and the friends of the court include legitimate clubs of every kind envisaged by the statute; that is, country clubs and veterans' organizations, some in wet counties and some in dry ones. None is unrepresented. The intervenors had the opportunity to stand aloof and insist upon their being sued as representatives of the class. They rejected that alternative and actively took part in the case. They should not be able to have it both ways.

As to property rights, the intervenors and the friends of the court are here only because they all affirmatively insist that their property rights will be affected by the decision. The intervenors participated fully in the trial, joined in the stipulation of facts, and had the opportunity to present or proffer proof. Moreover, after the circuit judge refused to allow his judgment to be superseded, the intervenors obtained a supersedeas in this court by asserting positively that the property rights of private clubs throughout the state were at stake. Upon this record it cannot reasonably be said that the holders of property rights in the private clubs have not had their day in court.

Parenthetically, the makeweight reasons adduced by the plurality are specious. The suggestion that the Director's duty is not clear because the members of this court are in disagreement implies that a writ of mandamus can be issued only by a unanimous court — an absurdity. That the trial judge did not treat the case as one for a declaratory judgment was also true in *Culp* v. *Scurlock,* but we so treated it. Finally, judicial restraint deters me from commenting upon the

plurality's statement that they "believe that an early determination of the substantive legal question which the appellees attempt to present is a desirable end." Indeed?

Inasmuch as the plurality opinion does not reach the validity of Act 132 of 1969, as it applies to private clubs, and the rest of us are not in agreement, my comments upon that issue are brief. Act 132 was intended *primarily* to permit the open sale of intoxicants by large restaurants and hotels, for consumption on the premises. Section 2 declares that purpose. The act levies a minimum $500 annual privilege tax and a 10% supplemental tax upon gross receipts from the sale of intoxicants. Sections 7 and 8. I do not understand the validity of the act to be questioned, insofar as it applies to sales by restaurants and hotels pursuant to a local option election held under Section 4 (d) of the act.

Section 10 of Act 132 authorizes the issuance of similar permits to certain private clubs, which, under Section 2, must have at least 100 members and must have been in existence for a year or more before the permit is applied for. Section 10 declares that the "preparation, mixing and serving" of mixed drinks under a "locker," "pool," or "revolving fund" system is not a sale. The section, however, levies the same $500 annual privilege tax and the same 10% supplemental gross receipts tax as those levied upon restaurants and hotels, except that in the case of private clubs the 10% tax is upon the gross receipts derived from "charges" made for the preparation, cooling, and serving of mixed drinks or beer drawn from the private stocks of club members. The only issue raised by the plaintiffs' complaint and by the stipulated facts is whether Act 132 is valid with regard to private clubs that comply meticulously with its provisions. (Of course, we are all aware, by common knowledge, that private clubs in restaurants and hotels in strictly dry counties do not meticulously comply with the act; but that matter is not before us.)

The private-club provision of Act 132 is invalid if it amended Initiated Act 1 of 1942, because Act 132 did not receive a two-thirds vote in the Senate. I do not see how it can be seriously argued that the later act did not amend the

earlier one. Initiated Act 1 provided for local option elections to prohibit the issuance of licenses for "the manufacture or sale, or the bartering, loaning or giving away of intoxicating liquor." Ark. Stat. Ann. § 48-801 (Repl. 1964). With respect to the Thorn Liquor Law (Act 108 of 1935), the language of Initiated Act 1 created a completely effective local option law, because the Thorn act permitted the issuance of a retailer's license for the distribution of intoxicants only in areas that had voted wet. Act 132 of 1969 purports to authorize the issuance of comparable licenses to private clubs in dry areas. The conflict between Act 132 and Initiated Act 1 is unmistakable. What one forbids, the other allows.

The argument by the appellants seems to be that the Initiated Act prohibited only the manufacture, sale, bartering, lending, or giving away of intoxicants. Upon that reasoning Act 132 is said to be valid, because the dispensing of such beverages under a locker, pool, or revolving fund system is not manufacturing, selling, bartering, lending, or giving away.

With respect, I think that argument verges on nonsense. The words of Initiated Act 1 must be read as a unit, expressing a single purpose rather than a multiple one. The issue in a wet-dry election, which is what the submission of Act 1 amounted to, is "wet or dry," not "wet, dry, or moisturized." True, the Initiated Act did not explicitly prohibit a locker, pool, or revolving fund system, nor, for that matter, did it explicitly prohibit the raffling off, growler rushing, or mortgaging of intoxicants. All the same, the people's intent was clear, just as it was in the Eighteenth Amendment to the national Constitution, which referred only to the manufacture, sale, or transportation of intoxicants. Neither measure was designed to leave a loophole big enough to drive a beer truck through. I think it our duty to give effect to the people's plain intent.

Roy, J., joins this opinion.